UNITED STATES, Appellee

v

THEODORE G. BOEHM, Seaman Apprentice,
U. S. Navy, Appellant

17 USCMA 530, 38 CMR 328

*Lieutenant Peter F. Vaira*, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant J. Arthur Bruno*, USNR.

*Captain R. S. Gasiorowski*, USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel C. R. Larouche*, USMC.

## Opinion of the Court

QUINN, Chief Judge:

This appeal raises two questions as to the propriety of the trial proceedings. The first deals with the excuse of a court member by the convening authority from further participation in the trial; the second is concerned with the right of the convening authority to reverse a court ruling which dismissed the charge on the ground the accused had been denied a speedy trial.[1]

Appearing before a special court-martial convened at Subic Bay, Republic of the Philippines, the accused moved to dismiss the charge of larceny referred to the court for trial on the ground he had been deprived of a speedy trial. The motion was granted. Several weeks later, the court reconvened on direction of the convening authority. He had reversed the court's ruling because, in his opinion, the evidence presented on the motion to dismiss demonstrated the Government had proceeded "with reasonable diligence," and without oppression of, or prejudice to, the accused. As a result, he ordered the court to proceed with the trial, with leave to reconsider the motion on additional evidence. Defense counsel renewed the motion to dismiss; this time it was denied. However, the trial did not continue. With the concurrence of Government counsel, the accused moved for a mistrial because

counsel and the court members had discussed the case during the intervening period.

The charge was referred to another special court-martial, none of whose members had sat on the previous court. Trial counsel and defense counsel were the same. Both were qualified lawyers. The proceedings moved through the usual preliminaries to the point where counsel waived the reading of the charge. Manual for Courts-Martial, United States, 1951, Appendix 8a. What followed is set out below:

"TC: With the consent of the accused and permission from the court, I shall omit the reading of the charge, a copy of which is before each member of the court and the accused. The charge is signed by YN3 J. A. Gary, USN, a person subject to the code, as accuser; is properly sworn to before an officer of the armed forces authorized to administer oaths; and is properly referred to this court for trial by Lewis K. Worthing, Captain, U. S. Navy, Commanding Officer, U. S. Naval Station, Subic Bay, Philippines, the convening authority. (The Charge Sheet follows this page)

"Does the accused consent?

"DC: The accused consents.

"PRES: The reading of the charge may be omitted. The original of the charge sheet will be in-

---

[1] We reserved decision on this question in United States v Gale, 17 USCMA 40, 37 CMR 304.

serted in the record of trial at this point.

"TC: The charge was served on the accused by William F. Cole, Lieutenant Commander, U. S. Navy, for the trial counsel, on 31 October 1966. Before receiving your pleas, Boehm, I advise you that any motion to dismiss the charge or to grant other relief should be made at this time.

"DC: The defense has two motions to make at this time. It's first motion is a motion to dismiss for lack of a speedy trial."

The defense motion to dismiss was denied. Defense counsel then moved for a continuance, and this motion was granted. When court reconvened, the following transpired:

"TC: Let the record show that all parties who were present when the court recessed are again present.

"PRES: We'll have to make a correction on that, Mr. Carriere.

"TC: I beg your pardon, with the exception of Lieutenant (jg) Murray who has been excused with the expressed consent of the convening authority.

"PRES: Has the defense any objection to proceeding with the court as now constituted?

"DC: No, sir.

"PRES: I would like to remind the members of the court, counsel, and the reporter that they remain under their original oaths. At the time that this court granted the continuance on the motion of the defense, we had proceeded almost to the arraignment of the accused and prior to receiving the plea of the accused, it was the option of the defense to make any motions. I ask you now, do you have any motions to make or are you ready to proceed?

"DC: The defense at this point has an additional motion to make."

With the completion of these proceedings, the trial progressed in regular order to conviction and sentence.

**532**

Since a favorable ruling on the accused's contention that the convening authority lacked power to reverse the court-martial ruling granting his motion to dismiss will obviate consideration of the correctness of proceedings at the second trial, we turn first to that question.

Trial rulings are subject to review by a convening authority only as provided in the Uniform ■ Code of Military Justice. United States v Knudson, 4 USCMA 587, 16 CMR 161. The specific situation presented by this case is governed by Article 62 (a), Code, supra, 10 USC § 862. It provides as follows:

"If a specification before a court-martial has been dismissed on motion and the ruling does not amount to a finding of not guilty, the convening authority may return the record to the court for reconsideration of the ruling and any further appropriate action."

The Article gives the Government the right to obtain review of a trial ruling which disposes of a charge on a ground other than one absolving the accused of guilt. In this regard, the Article is like 18 USC § 3731, which authorizes an appeal in a criminal case by the Government to either the Supreme Court of the United States or the Court of Appeals, depending upon the nature of the judgment of dismissal.

Appellate defense counsel acknowledge the general applicability of the Article to motions constituting a plea in bar, such as a motion based on alleged expiration of the statute of limitations, but they contend it does not extend to a motion to dismiss for lack of speedy trial. The contention has two aspects. The first is that the Article is merely a restatement of the practice before the Uniform Code, which did not include a motion of the kind in issue; the second is that the grant of a motion to dismiss for denial of a speedy trial "amounts to a judgment of acquittal" from which there is no right of review.

Appellate defense counsel contend

that the court-martial practice before the Uniform Code of Military Justice specifically prohibited a motion to dismiss for lack of speedy trial. Support for this view is sought in the provision in the Manual for Courts-Martial, U. S. Army, 1949, to the effect that an objection by an accused "that owing to the long delay in bringing him to trial he is unable to disprove the charge or to defend himself" is not a proper subject "for motion prior to plea, however much . . . [it] may constitute ground for a continuance." *Id.*, paragraph 64*g*, at pages 60, 61. It may be doubted that this provision prohibited a motion to dismiss for lack of speedy trial. The language of the provision can be construed as indicating the settled rule that delay alone does not necessarily constitute denial of a speedy trial, especially if the delay is occasioned by the accused. See United States v Hounshell, 7 USCMA 3, 6–7, 21 CMR 129; Fleming v United States, 378 F 2d 502 (CA 1st Cir) (1967); cf. United States v Shelton, 211 F Supp 869 (DC DC) (1962). Also, several cases indicate motions to dismiss were, in fact, entertained under the 1949 Manual, although not then regarded as based on the constitutional guarantee of a speedy trial. See United States v Lea, 1 CMR (AF) 214, affirmed by the Judicial Council, 2 CMR (AF) 49; United States v Bunker, 1 CMR (AF) 567. In any event, we

need not decide the correctness of this part of the accused's argument. Whatever the practice under the 1949 Manual, we are bound by the Constitution, the provisions of the Uniform Code, and the practice under the 1951 Manual. We have specifically held that a motion to dismiss for lack of speedy trial is proper in the current practice. United States v Hounshell, supra; see also United States v Davis, 11 USCMA 410, 29 CMR 226; United States v Lamphere, 16 USCMA 580, 37 CMR 200.

On the basis of a literal reading of Article 62(a), the dismissal of a charge for lack of speedy trial is plainly within its terms. However, appellate defense counsel contend the Article is inapplicable because the draftsmen of the Uniform Code expressly intended that the Article apply only to those motions contemplated by them. See United States v Heath, 260 F 2d 623 (CA 9th Cir) (1958). We have carefully examined the legislative history cited by appellate defense counsel as limiting the scope of the Article. The motion to dismiss for lack of speedy trial is indeed unmentioned by name. It is, however, quite clear from the testimony of Mr. Felix Larkin, one of the principal proponents of the Code, supra, which is quoted by appellate defense counsel, that the motions mentioned by him as comprehended by the Article were merely illustrative, not exclusive.[2] We find

---

[2] The testimony is as follows:

"Mr. PHILBIN. How about section (a) there, what sort of a case would that be? Have they made a practice of dismissing some of these cases without prejudice so they may be revived?

"Mr. LARKIN. Which section?

"Mr. PHILBIN. Subsection (a) of article 62.

"Mr. LARKIN. You see, there may be any number of motions throughout the course of the trial which result in a cessation of the trial.

"Mr. PHILBIN. This says here 'dismissed,' where a case has been dismissed on motion.

"Mr. LARKIN. Which motion does not go to the merits of the case and does not amount to an acquittal,

for instance a motion addressed to the jurisdiction which may be sustained, or a motion invoking the statute of limitations.

"Now it may well be that the law officer would grant such a motion and it turns out that he is in error, that the statute actually hasn't run. He has computed the time incorrectly. Well, now, such a motion was not to the merits of the case. It doesn't amount to—

"Mr. PHILBIN. A jurisdictional question.

"Mr. LARKIN. It doesn't amount to a finding of [not] guilty." [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1178–1179. See also United States v Gravitt, 5 USCMA 249, 17 CMR 249.]

nothing in the legislative background of the Article that even suggests an intention to exclude dismissal of a charge because of lack of speedy trial.

In support of the appeal to history as a limitation on the scope of Article 62(a), appellate defense counsel also call attention to a report on certain seminars in the office of the Judge Advocate General of the Army dealing with preparation of the 1949 Manual. They contend the report demonstrates that motions to dismiss were only those described as pleas in bar. Counsel contend that a motion to dismiss for lack of speedy trial is not a plea in bar, and this accounts for the failure to include it among those listed by the draftsmen of the Code.[3] A number of Federal cases, including United States v Heath, supra, and United States v Apex Distributing Company, 270 F 2d 747 (CA 9th Cir) (1959), are urged upon us as indicating that the motion is not a plea in bar.

There is a surprising dearth of authority in the Federal courts as to the nature of a motion to dismiss for lack of speedy trial. *Heath* and *Apex Distributing Company* do not deal with that problem. They were concerned with the provision of Rule 48 of the Federal Rules of Criminal Procedure authorizing dismissal of a prosecution because of "unnecessary delay in bringing a defendant to trial." Although it has been said that Rule 48 embodies the Sixth Amendment right to speedy trial, the two provisions are not synonymous. The Court of Appeals for the District of Columbia has pointed out that Rule 48 "places a stricter requirement of speed on the prosecution, and permits dismissal of an indictment even though there has been no constitutional violation." Mathies v United States, 374 F 2d 312, 314–315 (CA DC Cir) (1967). We have found only one Federal case which directly holds that dismissal of a prosecution for denial of the right to a speedy trial bars reindictment for the same offense. Mann v United States, 304 F 2d 394 (CA DC Cir) (1962), certiorari denied, 371 US 896, 9 L ed 2d 127, 83 S Ct 194 (1962). See also Notes, "The Right to a Speedy Criminal Trial," 57 Columbia Law Review 846 (1957). Although *Mann* has been questioned by the Court of Appeals for the Ninth Circuit in Cohen v United States, 366 F 2d 363 (1966), certiorari denied, 385 US 1035, 17 L ed 2d 682, 87 S Ct 771 (1967), the principle it sets out is, in our opinion, supported by the decision of the Supreme Court in United States v Provoo, 350 US 857, 100 L ed 761, 76 S Ct 101 (1955).

The Federal Government's right to appeal in a criminal case is, as noted earlier, limited by 18 USC § 3731 (formerly 18 USC (1940 ed) § 682, as amended). An appeal can be taken directly to the Supreme Court from a "decision or judgment sustaining a *motion in bar*, when the defendant has not been put in jeopardy." (Emphasis supplied.) In Petition of Provoo, 17 FRD 183 (D Md) (1955), the trial court granted a defense motion to dismiss for denial of a speedy trial. Purporting to proceed by virtue of the statutory authorization for appeal, the Government appealed directly to the Supreme Court. That Court affirmed the trial judge's ruling. What is significant here is that the Supreme Court accepted appellate jurisdiction of the case. Cf. Carroll v United States, 354 US 394, 1 L ed 2d 1442, 77 S Ct 1332 (1957). "[A]ny decision," observed the Court of Appeals in *Apex Distributing Company*, "which deals with the merits of an appeal . . . [and does not reserve decision as to jurisdiction] must be regarded as an adjudication that . . . [the] court had jurisdiction notwithstanding that the matter was not expressly dealt with in the opinion." *Id.*, at page 757. Under *Provoo*, therefore, a motion to

---

[3] Extending the argument might leave the accused no better off than he is now. If the motion is not a plea in bar, then, as we indicate later in the text, the accused can be recharged. It is perhaps arguable that return of the charge to the court-martial by the convening authority, without objection by the accused, was tantamount to a second prosecution, with the preliminary steps waived by the accused.

dismiss for lack of speedy trial is a motion in bar; and, as such, it is specifically within the terms of the seminar report cited by appellate defense counsel as evidence of the kind of motions within the scope of Article 62(a). Accused's own authorities, therefore, establish that a ruling dismissing a charge on the ground of lack of speedy trial may be reviewed by the convening authority under the provisions of Article 62(a).

We turn to appellate defense counsel's contention that the granting of a motion to dismiss for lack of speedy trial "amounts to a judgment of acquittal" from which there is no appeal. The argument is predicated upon a comment in the Court of Appeals' opinion in the *Heath* case. This case was not based on denial of speedy trial, but on a ruling by the trial judge dealing with evidence intended to be used at trial. The trial judge had ordered the Government to make certain evidence available to the defendant for inspection and copying, as provided by Rule 16, Federal Rules of Criminal Procedure. The Government apparently had lost the records, which had been obtained from the defendant, and the United States Attorney, therefore, indicated he would probably be unable to comply with the order. Without stating any grounds therefor, the judge dismissed the indictment. Thereupon, the Government appealed to the Court of Appeals. As viewed by the Court of Appeals, the question presented by the appeal was "whether the government is by statute accorded an appeal from dismissal of indictment for inability of the prosecution to comply with the condition precedent of production" of evidence. United States v Heath, supra, at page 625. After noting that if the dismissal was for a reason that barred prosecution, it would be its "duty . . . to certify the matter," under 18 USC § 3731, to the Supreme Court of the United States, the Court concluded the motion on which the judgment was based did not involve a plea in bar because if the Government found the records it could make them available to the defendant and then proceed with

the trial. It determined that the judgment of dismissal had been entered only to enable the Government to appeal from the order to produce, which is not itself an appealable order. In passing, the Court remarked that the judgment of dismissal was "equivalent to a judgment founded upon a directed verdict of acquittal." *Id.*, at page 632. Since the Court acknowledged that the reason for the judgment of dismissal "did not affect the merits of the charge," it would appear that its comparison of the result with a directed verdict of acquittal was merely an observation on the practical effect of the judgment, not a determination that it constituted a finding of not guilty. *Id.*, at page 628. As we construe *Heath*, it does not hold that a motion to dismiss for lack of speedy trial amounts to an acquittal or, in military terms, a finding of not guilty. *Apex Distributing Company,* also relied upon by the accused, was, like *Heath*, a dismissal for failure to comply with an order to produce. Significantly, the Court there indicated the dismissal did not prevent a second prosecution for the same offense, which is not true of a directed verdict of acquittal. It is apparent, therefore, that neither *Heath* nor *Apex Distributing Company* supports the accused's contention that the grant of a motion to dismiss for denial of the right to speedy trial amounts to a finding of not guilty.

A motion to dismiss for lack of speedy trial does not deal with the guilt or innocence of the accused. Rather, it is concerned only with the reasonableness of the time and the circumstances in which the Government brings the case to trial. It may incidentally involve loss of evidence because of the delay, United States v Parish, 17 USCMA 411, 38 CMR 209, but it does not call into question the sufficiency of the evidence against the accused. Perhaps the best indication that the motion has nothing to do with the accused's guilt or innocence is the fact that, in the military practice, an adverse ruling may be reviewed on appeal even though, after the ruling, the accused has entered a voluntary

plea of guilty. See United States v Cummings, 17 USCMA 376, 38 CMR 174; United States v Williams, 16 USCMA 589, 37 CMR 209; cf. Gale v United States, 17 USCMA 40, 37 CMR 304. Since the motion does not involve the merits of the charge, a favorable ruling on the motion does not "amount to a finding of not guilty." It follows, therefore, that a motion to dismiss for lack of speedy trial is within the general scope, not the stated exception, of Article 62(a).

Before leaving this issue, it is appropriate to comment on the convening authority's action, not ■ from the standpoint of his power to review, but whether his decision was correct. When reviewing a question affecting a constitutional right, an appellate authority must be circumspect in regard to findings of fact favorable to the accused. United States v Lamphere, supra. Still, it is bound to determine whether there is a substantial basis for the findings, and to reverse the ruling below if there is not. United States v Batson, 12 USCMA 48, 30 CMR 48; United States v Davis, 11 USCMA 410, 29 CMR 226. We are satisfied that the convening authority's decision to reverse was justified as a matter of law and fact. The evidence shows an important witness had absented himself without leave for a considerable part of the pretrial period. See United States v Kaufman, 311 F 2d 695 (CA 2d Cir) (1963); United States v Palermo, 27 FRD 393 (SD NY) (1961). We hold, therefore, that the convening authority did not err in returning the charge to the original court-martial for further proceedings.

Reviewing the second trial, the accused contends the record of trial does not indicate that, as required by Article 29(a), Code, supra, 10 USC § 829, the convening authority's excuse of the court member was for good cause. See United States v Metcalf, 16 USCMA 153, 36 CMR 309. In material part, Article 29(a) provides that, after the accused has been arraigned, no member shall be absent or excused except "by order of the convening authority

**536**

for good cause." The reason for the excuse should be set out ■ in the record of trial. See Manual for Courts-Martial, United States, 1951, paragraph 41; United States v Grow, 3 USCMA 77, 11 CMR 77. If no reason for the member's absence appears in the record, an appellate court will not assume that the absence was for good cause. United States v Greenwell, 12 USCMA 560, 31 CMR 146. Thus, the crucial question presented by the accused's assignment of error is whether the accused was arraigned before or after the adjournment of the first meeting of the court. Appellate defense counsel contend the arraignment occurred before the adjournment; the Government maintains arraignment did not take place until court convened for the second session and the accused was specifically called upon to plead. Manual for Courts-Martial, supra, paragraph 65a; United States v Houghtaling, 2 USCMA 230, 8 CMR 30; see also Rule 10, Federal Rules of Criminal Procedure; Caldwell v United States, 160 F 2d 371 (CA 8th Cir) (1947).

The president's direction to trial counsel, on reconvening the court, to "proceed with the arraignment" seems to indicate that he did not think the arraignment had been completed. However, his later comment as to the arraignment suggests that he, may mistakenly have believed the entry of a plea was part of the arraignment. See Manual for Courts-Martial, supra, paragraph 65a; United States v Houghtaling, supra. Whatever the president's opinion as to the legal effect of the proceedings already had, we are free to determine whether the accused was arraigned on the basis of what actually transpired at the first session. Cf. United States v Pond, 17 USCMA 219, 223, 38 CMR 17.

Both parties agree that, under the Manual, the process of arraignment involves two distinct elements: (1) Reading the charge, or having the accused waive the reading; and (2) calling upon the accused to plead. Manual, supra, paragraph 65a; see United States v Robinson, 13 USCMA

674, 677–678, 33 CMR 206. The Trial Guide set out in Appendix 8*a*, Manual, supra, at pages 507–508, describes the arraignment procedure as follows:

"TC: The charges have been properly referred to this court for trial, and with their specifications, are as follows:

"NOTE. — The TC now reads the charges and specifications upon which the accused is to be tried, with the name and description of the accuser, the affidavit, and the reference for trial (pp. 2 and 3 of Charge Sheet). They are copied verbatim into the record at this point, regardless of whether the accused waives the actual reading of the charges and specifications. The accused may waive the actual reading of the charges and specifications in court (65*a*):

"TC: With the consent of the accused I shall omit the reading of the charges, a copy of which is before each member of the court (, the law officer,) and the accused. The charges are signed by ————, a person subject to the code, as accuser; are properly sworn to before an officer of the armed forces authorized to administer oaths; and are properly referred to this court for trial by ————, the convening authority. The charges and specifications, the name and description of the accuser, his affidavit, and the reference for trial will be copied verbatim into the record.

"DC: The accused consents.

"LO (PRES): The reading of the charges may be omitted.

"TC: The charges were served on the accused by (me) (————) on ———— 19——. ————, how do you plead?

"NOTE. — This completes the arraignment, of which the pleas are no part (65*a*).

"NOTE. — Unless the date of service is at least five days prior to the date of trial in a general court-martial (three days for a special court-martial), except in time of war, the accused may ob-ject to this defect in service (Art. 35). If he does so, the court must grant a continuance at this point following arraignment.

"TC: Before receiving your pleas, I advise you that any motions to dismiss any charge or to grant other relief should be made at this time.

"NOTE. — Motions to dismiss and for other relief, such as motions to sever, for continuance, or for examination of the accused because of suspected insanity, are properly presented at this point; all proceedings and action thereon will be recorded. See 53*d*, 67, and 68. Any explanation of the accused's right to move that a charge be dismissed (53*h*, 68*c*) because barred by the statute of limitations, and the accused's response thereto, will be recorded.

"DC: The defense [has no motions to be made] [moves that Specification ————, Charge ————, be dismissed because of former acquittal, on ————, by a court-martial convened pursuant to ————, dated ———— 19 ————, of the charge of ———— (reciting charge and specifications in full)] [moves that —]."

Comparison of the Trial Guide with the transcript of the record in this case indicates that the trial proceeded substantially as the Manual provides, except that trial counsel neglected to ask the accused "how do you plead?" in advance of saying: "Before receiving your pleas, Boehm, I advise you that any motion to dismiss the charge or to grant other relief should be made at this time." Government counsel contend that since trial counsel did not, formally and expressly, call upon the accused to plead, the arraignment was not complete. Modern criminal law does not demand rigid adherence to fixed formulas. Where a particular procedure is required, it is sufficient if the substance thereof is observed. See United States v Nelson, 3 USCMA 482, 13 CMR 38; United States v O'Brien, 3 USCMA 325, 12 CMR 81. In our opinion, notice that the accused was required to plead was clearly im-

plied in the sentence beginning: "Before receiving your pleas." We conclude, therefore, that the arraignment was completed at the first session of the court. No member could thereafter be excused from attendance without "good cause."

In United States v Greenwell, supra, at page 562, we held that it is the "duty . . . [of] the ■ United States to demonstrate in the record the reasons for a member's absence after arraignment." We further held that a mere recital in the record that the member was "excused" by the convening authority is not sufficient to discharge the obligation. The record must "affirmatively" indicate that the reason for the member's excuse "falls within the provisions of the Code." United States v Grow, supra, at page 83.

The decision of the board of review is reversed, and the findings of guilty and the sentence are set aside. A rehearing may be ordered.

KILDAY, Judge (concurring):

Article 62(a), Uniform Code of Military Justice, 10 USC § 862, here involved, reads as follows:

"If a specification before a court-martial has been dismissed on motion and the ruling does not amount to a finding of not guilty, the convening authority may return the record to the court for reconsideration of the ruling and any further appropriate action."

A plain and unambiguous statute is to be applied, not interpreted. United States v Davis, 12 USCMA 576, 31 CMR 162. Because the convening authority's action here is clearly within the terms and purpose of Article 62(a), supra, I concur with Chief Judge Quinn.

I believe my dissenting brother misconceives the character of both Manual for Courts-Martial, United States, U. S. Army, 1949, paragraph 64f, and Manual for Courts-Martial, United States, 1951, paragraph 67f. He would have us construe both provisions as giving unimpeachable finality to a **538**

court-martial's dismissal of a charge for lack of speedy trial. This limitation he then extends to Article 62 "in precisely the same manner." This simply cannot be.

Both of these Manual provisions provide—and the quote from paragraph 64f, supra, shows—that in such matters the court-martial will accede to the view of the convening authority on matters of law. On matters of fact, they may exercise their discretion "in reconsidering the motion." This is a far cry from saying the convening authority may not, in the first instance, rule against such a holding. Indeed, these Manual provisions provide that he may. Here the process utilized conformed to both Manual and statutory requirements.

While some of the ends apparently advocated in the dissenting opinion may be desirable, we are not permitted to achieve the same in derogation of a plain and unambiguous provision of the statute.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with that portion of the principal opinion which orders a rehearing for the failure to explain on the record the reason for excusing a court member after accused's arraignment. Uniform Code of Military Justice, Article 29, 10 USC § 829; United States v Metcalf, 16 USCMA 153, 36 CMR 309; United States v Greenwell, 12 USCMA 560, 31 CMR 146. I disassociate myself from the remainder of the opinion, however, as it approves the direction by the convening authority that the court-martial reconvene and try the accused after it had dismissed the charges for lack of speedy trial.

For many years, this Court has sought to remove the convening authority from the trial of a case, once charges have been referred. It has reinforced the independence of law officers and their counterparts in special courts-martial and brought to these one-time arbitrary tribunals a truly judicial atmosphere. Now, in

one quick decision, our work and that of the Congress is set at naught, and the convening authority is left free to reinstitute the trial of judicially dismissed charges at will. No longer will law officers or presidents be able to regard themselves as acting in judicial capacities. They will now know that any ruling in favor of an accused which serves to terminate the trial is subject to approval by the convening authority and, lacking such, is as meaningless as if it were never entered. Certainly, Congress intended no such result when it enacted Code, supra, Article 62, 10 USC § 862, and I cannot be a party to construing it in such a manner as to set back the administration of military justice to the days which led to the Code's enactment.

An examination of the record now before us affords an excellent example of what this means to judicial determinations below. When this special court-martial initially convened at Subic Bay on November 23, 1966, defense counsel moved to dismiss the charges on the basis of denial of accused's right to a speedy trial. In support thereof, it was stipulated the offense was allegedly committed on September 9, 1966, the evidence secured on September 10, 1966. Charges were not sworn until October 27, 1966, and accused was not informed thereof until October 28, 1966. They were referred for trial on October 31, 1966.

It further appeared that the victim of the alleged offense had departed Subic Bay with his ship on September 10. He returned on October 1. He went absent without leave on October 14 and returned October 20. He again absented himself on October 25 and remained in that status until November 15. While there was no demand for trial, counsel for accused was appointed only a week prior to convening of the court-martial.

On the foregoing facts, the president, ruling subject to objection by any member, dismissed the charges. A member objected, but the court, in closed session, "two-thirds of the members concurring," sustained the motion

to dismiss. Accordingly, the court adjourned.

In short, this judicial forum heard evidence from both sides; found the facts; and took action in accord with what it necessarily believed, namely, that there had been a period of substantial delay in processing and trying any charges against the accused, amounting to a denial of his right to immediate prosecution.

The convening authority, however, disagreed. On December 14, 1966, some three weeks later, he ordered the court-martial reconvened. The letter directing such action set forth substantially the same chronology as that shown in the record and stated in part:

"2. The undersigned disagrees with the ruling of the court in granting the defense motion to dismiss. There was nothing in the record to suggest any oppresive [sic] design or lack of reasonable diligence on the part of the government, and, while the trial counsel admitted to 'brief periods of inactivity,' these do not appear to have been inordinately excessive or unreasonable under the circumstances. Furthermore, it does not appear that the claimed delay impaired the accused's defense, and, that although the accused was placed in confinement on or about the date of the alleged offense, he was so confined not in any way connected with the instant charge. Moreover, the record indicates that the accused, either himself or through his originally appointed defense counsel or present defense counsel, never made known any desire for an earlier hearing. It is also to be noted that a substantial part of the delay was due to obtaining the physical transfer to Subic Bay of a material witness, SR Timothy L. BRANDMAN, USN, the alleged theft victim, from his ship, the USS EVANS, the situs of the instant alleged offense, which involved a period of 21 days, and the subsequent recalcitrance of this witness shortly after his arrival in Subic Bay in going on an unauthorized absence on two occasions for a

**539**

total period of 27 days." [Appellate Exhibit II.]

The convening authority then directed a reconvening of the court and reconsideration of its ruling in the premises. He thereafter attached a precis of legal authorities which he had considered in taking his action and which, he stated, "may be considered by the court." To say that it reads like a brief for the prosecution is an understatement.

The court did, in fact, reconvene and reconsider its dismissal of the charges. Though no further evidence was offered by the Government in explanation of the delay, the matter was argued by both sides. On this occasion, the court denied the defense motion. Thereafter, on grounds not relevant here, a joint motion for mistrial was granted.

On December 21, 1966, another court-martial convened to hear accused's case. Again, a motion for dismissal, based on lack of speedy trial, was made and denied. Thereafter, a motion for continuance was granted in order to obtain the attendance of two defense witnesses whom the convening authority had refused to procure "for economic and legal reasons."

On January 27, 1967, the court again convened. After once more denying a defense motion for dismissal of the charges, premised on our decision in United States v Schalck, 14 USCMA 371, 34 CMR 151, the court proceeded to trial on the merits.

The convening authority subsequently took his action on the record without commenting as to the matter of delay in preference of the charges. The supervisory authority, however, considered the delay "excessive but not prejudicial."

From the foregoing, it will be seen that the evidence on the issue was presented to the court by counsel for the respective parties, and it concluded the Government had not borne its burden of explaining the untoward delay in preferring charges and bringing accused to trial. It thus found accused had been denied a speedy trial.

The convening authority did not purport to claim the court had no basis for its conclusion or, indeed, that it had done more than wrongly interpret the evidence presented it. Rather, acting on the same basis, he simply overturned its factual conclusion and arrived personally at a different result, causing him to direct the court to reconvene and reconsider its action.

My brothers purport to find a basis for his action in Code, supra, Article 62(a), which provides:

"(a) If a specification before a court-martial has been dismissed on motion and the ruling does not amount to a finding of not guilty, the convening authority may return the record to the court for reconsideration of the ruling and any further appropriate action."

In essence, the majority declare that this provision of the Code is to be likened to 18 USC § 3731, giving the United States the right to appeal, under certain circumstances, a judgment of dismissal to either the Supreme Court or the Court of Appeals. Thus, it is said the Government here, upon having the charge dismissed for denial of a speedy trial, was entitled to appeal to the convening authority and, in appropriate cases, of which this is one, secure reversal. No authority is cited for this conclusion and, in my opinion, there is no basis for so construing the Article. Rather, it appears to be a limited continuation of the convening authority's power to require a court-martial to reconvene and reconsider an erroneous action on its part, predicated on a clear mistake of law.

Thus, upon discussion of the proposed Article, Congress was informed that the situation to which it referred was one in which the law officer "is in error" as, for example, when he incorrectly computed the time in determining whether a statute of limitations had run. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1178. The same example is given in the report on the bill, with the added notation that it applied "when, in fact,

540

the convening authority is able to prove beyond any doubt that the statute of limitations had not run." House Report No. 491, 81st Congress, 1st Session, page 29. The provision was taken from earlier Manual regulations, which permitted the convening authority a like power on questions of law, but not on issues of fact. Thus, the Manual for Courts-Martial, U. S. Army, 1949, declares, at paragraph 64f:

". . . To the extent that the court and the appointing authority differ as to a question which is solely one of law, such as a question as to the jurisdiction of the court, the court will accede to the views of the appointing authority; *but if the matters as to which the appointing authority disagrees are issues of fact,* . . . the court will exercise its sound discretion in reconsidering the motion." [Emphasis supplied.]

It was intended that Code, supra, Article 62, be limited in precisely the same manner, for this Manual provision "now has statutory recognition." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 84. Indeed, the same explanation is embodied in the Manual for Courts-Martial, United States, 1951, paragraph 67f.

This brings me to the nub of the problem before us. We have repeatedly stated that the right to a speedy trial is relative, must be determined in light of all the circumstances, and turns upon the facts of each case. United States v Brown, 13 USCMA 11, 32 CMR 11; United States v Batson, 12 USCMA 48, 30 CMR 48; United States v Callahan, 10 USCMA 156, 27 CMR 230. Indeed, in United States v Brown, supra, at page 13, Judge Kilday declared:

". . . In this area as in many others, each case turns on its own facts. . . ."

More recently, we have specifically declined to review decisions below regarding speedy trial on the ground that they were predicated on a factual basis. Thus, in United States v Smith,

17 USCMA 427, 38 CMR 225, we upheld the action of the board of review in dismissing the charges for lack of speedy prosecution. Judge Kilday, speaking for the Court, found, at page 430:

"There is every reason to interpret the board of review's action in light of the question initially posed. We are compelled to believe that when asked if accused's restriction constituted restraint 'in fact,' the board's response was intended to answer that limited inquiry and no more."

Again, in United States v Parish, 17 USCMA 411, 38 CMR 209, at page 416, we stated the issue of speedy trial was one of fact, depending "upon the facts and circumstances of each case," and referred to the delay there as "the plain fact of the matter." *Id.,* at page 417. See also United States v Lamphere, 16 USCMA 580, 37 CMR 200.

In the case before us, the court members were presented with the evidence bearing on the issue: The length of the delay; the circumstances bearing on the return and repeated absences of the witness; the apparent inability of command to initiate proper charges; and other considerations relevant to its determination of the ultimate factual issue as to the denial of speedy trial. The president ruled that the delay was excessive and the accused had been denied his right to prompt preference of charges and equally prompt trial thereon. The court members voted on the question, and his determination was sustained by a two-thirds vote. In short, the court made findings of fact and took action thereon. United States v Smith; United States v Lamphere; United States v Brown, all supra. Such being the case, the convening authority had no power under Code, supra, Article 62, to direct reconsideration of the matter. He did not disagree on an issue of law. His letter makes clear that he simply disagreed on the facts and inferences to be drawn therefrom. Under the authorities cited, I believe he had no such power to overrule the

**541**

court members and cause the trial to proceed.

I register my disagreement for this reason. My brothers today construe Code, supra, Article 62, most broadly, allowing both matters of law and fact to be reexamined by the convening authority in the face of the granting of a motion to dismiss, and this is done despite the clear intent to limit him to matters of law, demonstrated both in the legislative history and the Manual for Courts-Martial, United States, 1951. Cf. United States v Smith, 13 USCMA 105, 32 CMR 105. In effect, then, the convening authority's judgment may in the future be substituted for that of the court in many areas heretofore thought to be the exclusive province of the latter. I regard this as a marked inroad on their judicial independence and a long step backwards in the administration of military justice. In short, I believe we here take a step with far-reaching consequences as well as one which is not sanctioned by law. Accordingly, I dissent.

I join in reversing the board of review, but I would also sustain the original action of the trial court and dismiss the charges, on the basis of its factual finding.