UNITED STATES, Appellant

v

PATRICK ALLEN O'BRIEN, Private U. S. Marine Corps,
Appellee

No. 27,325

December 21, 1973

*Lieutenant E. Alan Hechtkopf,* JAGC, USNR, argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel George L. Bailey,* USMC, and *Lieutenant Colonel L. K. O'Drudy, Jr.,* USMC.

*Lieutenant H. Neil Broder,* JAGC, USNR, argued the cause for Appellee, Accused.

## OPINION OF THE COURT

DARDEN, Chief Judge:

The Judge Advocate General, United States Navy, has certified this case on the question whether the United States Navy Court of Military Review was correct in determining that the convening authority erred in overruling the military judge's dismissal of the charges against the accused for lack of speedy trial.

On January 15, 1972, the accused, a company clerk assigned to Supply Company, 1st Service Battalion, Camp Pendleton, California, burned his service record book and destroyed pages of the unit diary that contained references to him. He removed a United States Treasury check and some blank identification cards from the company safe and absented himself without leave. The accused's offenses were discovered by his unit on January 17, 1972. On the same day, the unit requested replacement of his service record book.

On January 19, 1972, civilian authorities took the accused into custody at Birmingham, Alabama, a distance of 2,038 miles from Camp Pendleton. On January 25, the Commandant, United States Marine Corps, directed that the accused be transferred to the Marine Corps Recruit Depot, Parris Island, South Carolina. He was received and confined there on February 2, 1972. Camp Pendleton mailed his reconstructed service record book on February 8, 1972, and forwarded his personal effects on February 9, 1972. The records were received on February 26, 1972.

On February 18, 1972, the accused was released from confinement and again absented himself without leave. On February 20, he was apprehended by civilian authorities in Birmingham, Alabama, and he was returned to Parris Island on March 12, 1972.

On March 14, 1972, the accused's battalion legal officer visited him in confinement and informed him that he would be tried by special court-martial for desertion, absence without leave, and destruction of his service record book. In fact, at that time no charges had been preferred, nor had the convening authority made any decision in the case. The legal officer's statement to the accused resulted from her assessment of his case and the convening authority's practice of usually following her advice.[1]

---

[1] The military judge was misinformed on the motion to dismiss that the ac-

On the same day, an agent of the Naval Investigative Service advised the legal officer that the accused was suspected of stealing, forging, and uttering a Government check and taking blank ID cards.[2] This was the first information that the accused's Parris Island unit had received regarding these offenses. As a result of this new information, the unit officers determined to prefer other charges and to order an Article 32 investigation.

On March 16, 1972, the accused was informed of the possible additional charges. On March 23, the case was referred to an Article 32 investigation and the battalion commander submitted a letter under Article 33, Uniform Code of Military Justice, 10 USC § 833, attempting to explain the delay. On March 28, 1972, an investigating officer and defense counsel were appointed. The investigating officer contacted the Naval Investigative Service on several occasions between March 29 and April 14, and determined that their investigation was incomplete.

On April 18, 1972, statements were received from Camp Pendleton and, on April 21, 1972, an additional charge of forgery was preferred. This was referred to the investigating officer on April 24. On the same day, he reviewed sworn statements obtained by the Naval Investigative Service and, on the following day, after obtaining additional statements in the Parris Island area, he agreed with defense counsel to hold the Article 32 hearing on April 28.

On April 28, the hearing was conducted in part and then continued because of the absence of a Government witness. The investigation was completed on May 1 and the report was submitted to the battalion commander on May 2. On the same day, the battalion commander recommended trial by general court-martial and the accused applied for an undesirable discharge in lieu of trial by court-martial. On May 5, the commander endorsed the accused's request to the general court-martial con-

vening authority, whose staff judge advocate received it on May 8.

On May 22, the pretrial advice to the convening authority was completed, and the accused requested a speedy trial. On May 23, his request for an undesirable discharge was denied, and the charges were referred to trial by general court-martial. On June 14, 1972, the earliest available date on the military judge's docket, the trial began.

The military judge granted the accused's motion for dismissal of the charges, based on lack of speedy trial and our decision in United States v Burton, 21 USCMA 112, 44 CMR 166 (1971). The trial counsel sought review of this ruling by the convening authority, who, after study, directed the military judge to reconsider his ruling and proceed with the trial. On reconvening the court, the judge found procedural deficiencies to exist in the convening authority's review and ordered the case to be resubmitted to him. This was accomplished, and the convening authority once more ordered the trial to proceed. The judge acceded to the convening authority's direction and trial was had on the charges.

Following the trial and action by the convening authority on the findings and sentence, the Court of Military Review determined that the military judge's ruling was correct and that the convening authority erred in overturning it and directing that the accused's trial proceed. It is with the propriety of this decision that we are now concerned.

■ The convening authority is empowered to overturn a ruling of the military judge dismissing the charges that does not amount to a finding of not guilty and to direct the trial to proceed, if the ruling is one on a question of law. Article 62, UCMJ, 10 USC § 862; United States v Bielecki, 21 USCMA 450, 45 CMR 224 (1972); United States v Boehm, 17 USCMA 530, 38 CMR 328 (1968). The convening authority must accept the findings of fact reached by the military judge if they are supported by the evi-

cused's case was referred to trial by special court-martial on March 14, 1972. This impression was corrected by the legal officer's testimony.

[2] On the same day, the agent secured an inculpatory statement from the accused regarding these offenses.

dence. In such instances, his action is limited to determining whether the findings of fact support the judge's ruling. If so, he must sustain the ruling. If not, he is empowered to overturn it and direct that the trial proceed. United States v Frazier, 21 USCMA 444, 45 CMR 218 (1972).

Neither party seriously attacks the convening authority's power to overturn the military judge's ruling. Appellate defense counsel principally contends that the convening authority's action was erroneous because the facts found by the military judge support his dismissal of the charges. The Government on the other hand argues that the facts do not make out a denial of speedy trial. Thus, they assert the military judge improperly held the Government responsible for delay in processing the larceny and forgery charges from the time of the accused's initial apprehension, although the authorities at Parris Island were not aware of these alleged offenses until March 14, 1972. It also contends that the other charges were prosecuted with reasonable diligence.

We agree with the Government that the authorities at Parris Island cannot be charged with notice of the larceny and forgery offenses as of the date of the accused's initial apprehension. United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969); United States v Wright, 37 CMR 646 (ABR 1967). Theoretically, the Government is a single entity that operates in a unitary fashion throughout the country. But, for purposes of speedy trial, we must also recognize the practical situation that arises when an accused commits offenses on the west coast, absents himself without leave, and is apprehended on the east coast and returned to a nearby military installation for trial. While it is true that he could be returned to his original station for trial, some consideration must be given to the time and expense this would occasion the Government. In view of the large number of absentee cases, we see nothing unreasonable in transferring the accused to a nearby installation for trial nor in the reasonable amount of delay that may result because of the need to obtain his records and other evidence. Thus, we do not agree with the defense

that the Government was, on the date of the accused's initial confinement, chargeable with notice of the larceny and forgery offenses simply because the accused was suspected by his original Camp Pendleton unit of committing these crimes.

At the same time, the record does not indicate that the military judge charged the Government with delay as to these offenses from the date of the accused's initial apprehension. He found that the Parris Island authorities did not know of these offenses until March 14, 1972. While he did not attribute to the Government the entire period of delay, it is also apparent that he believed that some degree of fault should be assigned in its failure to take prompter action with respect to these charges. He made similar findings with respect to the other charges.

We agree with his conclusions, both as to the law and the facts. At the trial, the defense relied on our holding in United States v Burton, supra, as did the Court of Military Review in sustaining the military judge's ruling. In that case, we stated, at 21 USCMA 118, 44 CMR at 172:

[A] presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed. [Footnote omitted.]

Repeating that holding in United States v Marshall, 22 USCMA 431, 435, 47 CMR 409, 413 (1973), we pointed out that only "really extraordinary circumstances" would serve to carry the Government's burden and that an explanation that the delay "was caused by difficulties usually encountered in the processing of charges for trial" was insufficient.

Application of the *Burton-Marshall* principle fully supports the military judge's ruling in this case. Granting that the authorities at Parris Island were not chargeable on the date of the accused's initial apprehension with notice of his alleged larceny and forgery at Camp Pendleton, we cannot accept the Govern-

ment's corollary proposition that it should not be held accountable for these charges until the Parris Island authorities were actually informed of the offenses on March 14. We believe the proper approach is to permit the Camp Pendleton authorities a reasonable period of time after they were notified of the accused's apprehension to inform Parris Island of the additional offenses, all of which occurred on or around the day on which the accused absented himself. While such a period will necessarily vary according to the circumstances of each case, we believe it was exceeded when Parris Island was not informed of the charges until March 14.

According to the evidence, the accused was suspected of the larceny of the check and blank identification cards on January 17, 1972. He was apprehended on January 19 and transferred to Parris Island on January 25. Camp Pendleton mailed his reconstructed service record to Parris Island on February 8. By that date at least, the responsible officials at Camp Pendleton should also have advised the Parris Island authorities of the other suspected offenses instead of waiting until March 14, on which date an investigation had to be initiated by the local Naval Investigative Service, necessitating an additional delay of approximately 1 month. Considered in this light, the disposition of these charges exceeded the *Burton* limitation without adequate explanation.

■ Turning to the other charges, we find no circumstances of the extraordinary nature required to excuse the delay in trial. We reach this conclusion despite our not considering the accused's initial confinement from January 19 until February 18 as being chargeable to the Government. The Government cannot be held accountable for this period; it released the accused in good faith, pending disposition of the case against him, and he promptly absented himself without leave. We encourage the elimination of unnecessary confinement and applaud the Government's apparent desire to impose no further restriction on the accused's liberty than initially appeared necessary. At the same time, an accused who, once set free, immediately violates his responsibility by again absenting himself without leave is not blameless.

Yet, accepting March 12, the date on which accused was finally returned to Parris Island, as the beginning of the period for which the Government is accountable, we note that 94 days elapsed before this trial commenced. The Government has failed to point out any extraordinary conditions during this period to explain the delay. On March 14, no charges had been preferred, and the additional charges were not preferred and referred to the investigating officer until April 24. Although the Article 32 investigation was completed, submitted, and forwarded by May 2, the pretrial advice was not accomplished and the case referred to trial until May 23.

■■ The event on which the Government relies at this level to justify the post-investigation delay is the accused's submission of a request for administrative discharge in lieu of trial. From the chronology, this request does not appear to have contributed to the delay. The accused submitted it on the day that trial by general court-martial was recommended. The request was forwarded by May 5 and acted on by the convening authority concurrently with reference of the charges to trial. In dealing with the discharge request, the Government continued to process the charges against the accused, and the record is devoid of any evidence that the request impeded their disposition. In these circumstances, we are unpersuaded that this period of delay is justifiably chargeable to the accused. This was only another incident of the normal processes of military justice. United States v Marshall, supra. We conclude that the U. S. Navy Court of Military Review correctly upheld the ruling of the military judge ordering charges dismissed for lack of speedy trial.

The certified question is answered in the affirmative and the decision of the U. S. Navy Court of Military Review is affirmed.

Judges QUINN and DUNCAN concur.