# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
OLMSCHEID, GALLUP, and KIRBY
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class JAMES H. WILLIAMS**
**United States Army, Appellant**

ARMY 20040760

101st Airborne Division (Air Assault)
Robert L. Swann (arraignment) and Lauren B. Leeker (trial), Military Judges
Colonel Richard M. Whitaker, Staff Judge Advocate

For Appellant:  Bernard J. Casey, Esquire (argued); Kathy M. Banke, Esquire; Captain Charles L. Pritchard, Jr., JA; (on brief); Bernard J. Casey, Esquire; Captain Sean F. Mangan, JA (on reply brief).

For Appellee:  Captain Michael C. Friess, JA (argued); Lieutenant Colonel Michele B. Shields, JA; Major Tami Dillahunt, JA (on brief).

11 April 2007

---------------------------------------
OPINION OF THE COURT
---------------------------------------

KIRBY, Judge:

An officer and enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of willful dereliction of duty and armed robbery, in violation of Articles 92 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 922 [hereinafter UCMJ].  The convening authority approved the adjudged sentence to a bad-conduct discharge and reduction to the grade of Private E1.

This case is before the court for review pursuant to Article 66, UCMJ.  We have considered the record of trial, appellant's assignments of error, oral arguments, the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the government's response thereto, and appellant's reply brief.  We find the errors asserted by appellant to be without merit.  Appellant's

assertion of improper withdrawal and re-referral of charges, however, is worthy of discussion.

**FACTS**

On 26 April 2003, appellant, a platoon sergeant, was traveling in a two vehicle convoy in Iraq heading to the local market to buy food and drinks for the soldiers. At an intersection, an Iraqi man driving a sport utility vehicle cut off the convoy, which proceeded to chase the vehicle until it came to a stop at a private residence. Appellant and Staff Sergeant (SSG) Lozano then approached the driver with weapons drawn, made him exit the vehicle and get down on the ground with his arms stretched above his head, and took the vehicle. They did not tell the Iraqi man why they were taking the vehicle, explain how he could get it back or be compensated, or leave a receipt as required by the Rules of Engagement (ROE) applicable at the time.[1]

On the way back to the ammunition supply point (ASP) where the unit was based, the convoy stopped along the side of the road, searched the vehicle interior and discarded many of its contents. The convoy removed the license plate and drove the Iraqi vehicle back to the ASP. At the ASP, appellant and SSG Lozano presented the vehicle's keys to their platoon leader, Second Lieutenant (2LT) Pavlik, told him they had confiscated the vehicle for him, and cited the ROE as authority for seizing the vehicle. The platoon leader was concerned they had seized the vehicle at gunpoint and not left a receipt. Although 2LT Pavlik had told his soldiers previously that he needed a vehicle, he had not ordered any vehicle confiscated; nor was he authorized to issue such an order, as he was not the commander.

Shortly thereafter, appellant directed his subordinate soldiers to intentionally damage the vehicle to change its appearance. The soldiers broke all of the vehicle's windows, scratched and dented it, and tore off the spoiler and pinstripes, so that it looked different from the vehicle they had seized. Later that evening, as several soldiers from the platoon sat around a camp fire, 2LT Pavlik and appellant devised a story to tell anyone who asked them how they acquired the vehicle. The gist of the

---

[1] The ROE provided: "Seize PRIVATE property only if it has a military use (e.g., weapons, ammunition, communication, equipment, or transportation) [and] your commander authorizes the seizure based on military necessity. Give the owner a receipt." This was further reinforced by United States Central Command General Order Number 1A, which provided: "Private or public property may be seized during exercises or operations only on order of the Commander, when based on military necessity. Such property will be collected, possessed, secured and stored for later return to the lawful owner. The wrongful taking of private property, even temporarily, is a violation of Article 121, [UCMJ]."

story was that the soldiers had found the vehicle abandoned on the side of the road. Appellant and 2LT Pavlik then coached the other soldiers on how to respond to questions if there was ever an investigation. Appellant told them that he used to be a police officer and that if everyone just "stuck to the story," nothing would happen to them. Staff Sergeant Lozano, observing that some of the soldiers appeared frightened, told the soldiers that if they got scared and wanted to tell the truth they could do so and he would take responsibility for taking the vehicle. Appellant later chastised SSG Lozano, telling him that his comment would make the soldiers more likely to "squeal."

On 8 August 2003, charges were preferred against appellant and referred to a summary court-martial (SCM).[2] Appellant was charged with two specifications of dereliction of duty for failing to stop members of his platoon from drinking alcohol and failing to stop 2LT Pavlik from bringing personally owned firearms into the area of operations. He was also charged with making a false official statement (by stating they found the vehicle abandoned by the side of the road) and armed robbery for the theft of the vehicle.

Prior to preferral and referral to a SCM, the trial counsel and defense counsel engaged in pretrial agreement negotiations, but never came to a meeting of the minds memorialized by a written agreement. The trial counsel was under the impression that they had "agreed" appellant would plead guilty and testify against the co-accuseds in exchange for a referral to a SCM. The trial counsel advised the convening authority that this "agreement" was a predicate for the SCM referral. The defense counsel and appellant, however, were under the impression that in order to secure a referral to a SCM, appellant would merely have to "fully cooperate." They believed this to mean only that appellant would provide a sworn statement and testify in the trials of the co-accuseds; they did *not* believe appellant was required to plead guilty at the SCM. The charges were referred to a SCM without further clarification or discussion.

Appellant met with the officer presiding over the SCM sometime in mid-

---

[2] The maximum punishment authorized at a SCM of a sergeant first class (E7) is forfeiture of two-thirds pay for one month, restriction to specified limits for two months, and reduction to staff sergeant (E6). Rule for Courts-Martial [hereinafter R.C.M.] 1301(d).

WILLIAMS – ARMY 20040760

August for a preliminary proceeding in accordance with R.C.M. 1304(b)(1).[3] The proceeding was informal with the two sitting at a table. There was not a recorder or anyone else present to make any notes of the proceeding.[4] The presiding officer read the charges to appellant and the two discussed appellant's rights, the procedures that would be followed at trial, and the date for the upcoming SCM trial proceeding. Appellant gave the presiding officer a list of requested witnesses for the SCM and the proceeding was adjourned until the agreed upon trial date.

Sometime after the preliminary proceeding, the defense counsel asked the trial counsel if he expected appellant to plead "guilty" at the upcoming SCM trial proceeding phase. The trial counsel conveyed his and the convening authority's understanding that the "agreement" required appellant to plead "guilty" and if appellant was now going to plead "not guilty," the government would have to re-examine whether the charges had been referred to the appropriate level court-martial. After discussion with appellant, the defense counsel informed the trial counsel that appellant planned to plead "not guilty" at the SCM.

On 30 August 2003, the battalion commander who had referred the charges to the SCM withdrew the charges and dismissed them without prejudice. On 13 September 2003, identical charges were re-preferred and the battalion commander appointed an officer to conduct a thorough and impartial investigation into the alleged offenses, pursuant to Article 32, UCMJ. On 5 April 2004, pursuant to the investigating officer's recommendation, the battalion commander dismissed Charge I, Specification 2,[5] and Charge II and its Specification[6] without prejudice and forwarded the remaining charges to the general court-martial (GCM) convening authority (GCMCA). On 6 April 2004, the GCMCA referred the remaining charges

---

[3] Rule for Courts-Martial 1304(b) divides a SCM into two distinct phases. The first phase (R.C.M. 1304(b)(1)) is the preliminary proceeding where the accused is provided with basic information regarding the allegations and his rights. The accused is then provided "a reasonable period of time to decide whether to object to trial by SCM." If the accused does not object to being tried by SCM then the SCM proceeds to the trial proceeding phase (R.C.M. 1304(b)(2)). It is during this second phase that the accused is arraigned and tried for the alleged offenses. *Id.*

[4] Rule for Courts-Martial 1305 requires a record of trial be prepared in a SCM and outlines what the record shall contain. Trial counsel testified that it was his practice to "have a [paralegal] present as a recorder during a [SCM]."

[5] Dereliction of duty for failing to stop 2LT Pavlik from bringing a privately owned firearm into the area of operations, in violation of Article 92, UCMJ.

[6] Making a false official statement, in violation of Article 107, UCMJ.

4

of dereliction of duty and armed robbery, in violation of Articles 92 and 122, UCMJ, to a GCM.[7]

At trial, the defense counsel moved to dismiss all the charges for improper withdrawal from the SCM and re-referral to a GCM without good cause. The defense argued that the government withdrew and re-referred the charges to a higher level court-martial in retaliation for appellant's free exercise of his right to plead not guilty under the Fifth and Sixth Amendments to the U.S. Constitution[8] and R.C.M. 910(a)(1).[9] The government argued that the withdrawal and subsequent GCM referral were proper because new information was discovered after the initial referral indicating appellant was more culpable than he had initially led the trial counsel and convening authority to believe. The new information indicated appellant played a greater leadership role in the armed robbery and subsequent attempt to conceal the crime. The government also argued the convening authority had based his SCM referral decision on the belief that appellant was going to plead guilty and testify against the co-accuseds.

The defense counsel fully litigated appellant's claim of improper withdrawal and re-referrel to a GCM at trial. The military judge found there was no arraignment at the SCM preliminary proceeding and no meeting of the minds or pretrial agreement. Moreover, the military judge found the trial counsel discovered additional information indicating appellant was more culpable than initially thought. She found the convening authority withdrew the charges for a proper purpose and, therefore, denied the motion to dismiss.

## LAW

Rule for Courts-Martial 604 provides in pertinent part:

> (a) *Withdrawal.* The convening authority or a superior competent authority may for any reason cause any charges

---

[7] The maximum punishment authorized for these offenses at a GCM was confinement for fifteen years and six months, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to Private E1.

[8] The Fifth Amendment states, *inter alia*, an accused shall neither be "compelled in any criminal case to be a witness against himself, nor shall be deprived of life liberty, or property without due process of law." The Sixth Amendment, *inter alia*, protects the right of an accused in a criminal prosecution, "to a speedy and public trial."

[9] Rule for Courts-Martial 910(a)(1) lists "not guilty" as an authorized plea.

WILLIAMS – ARMY 20040760

> or specifications to be withdrawn from a court-martial at
> any time before the findings are announced.
>
> (b) *Referral of withdrawn charges*. Charges which have
> been withdrawn from a court-martial may be referred to
> another court-martial unless the withdrawal is for an
> improper reason.

The discussion section following R.C.M. 604(b) explains:

> Improper reasons for withdrawal include an intent to
> interfere with the free exercise by the accused of
> [C]onstitutional or codal rights, or with the impartiality of
> the court-martial. . . . Before arraignment, there are many
> reasons for a withdrawal which will not preclude another
> referral. These include . . . reconsideration by the
> convening authority or by a superior competent authority
> of the seriousness of the offenses . . . . Charges withdrawn
> after arraignment may be referred to another court-martial
> under some circumstances. For example, it is permissible
> to refer charges which were withdrawn pursuant to a
> pretrial agreement if the accused fails to fulfill the terms
> of the agreement.

Rule for Courts-Martial 904 further provides: "Arraignment shall be conducted in a court-martial session and shall consist of reading the charges and specifications to the accused and calling on the accused to plead." Finally, the discussion following R.C.M. 904 states: "Arraignment is complete when the accused is called upon to plead; the entry of pleas is not part of the arraignment." *See United States v. Boehm*, 17 U.S.C.M.A. 530 (1968); *United States v. Jackson*, 41 C.M.R. 677 (A.C.M.R. 1970), *pet. denied*, 19 U.S.C.M.A. 403 (1970).

## DISCUSSION

The first issue we must determine is whether appellant was arraigned at the SCM preliminary proceeding. For the reasons articulated below, we agree with the military judge that appellant was not arraigned at the SCM.

Appellant argued at trial during the motion hearing and to this court that withdrawal of the charges from the SCM occurred *after* arraignment and was for the improper purpose of retaliating against him for asserting his Constitutional right to plead not guilty. Specifically, appellant asserted that he was read the charges and called upon to plead. As support for this assertion, appellant submitted an affidavit

6

with his appellate pleadings in which he stated in pertinent part, with emphasis added:

> 5. Major Hurley read from what appeared to be a script.[10] He told me he was the [SCM] officer. He read the charges from the charge sheet. He asked if I understood the charges and my rights under the [SCM] procedures. I responded that I did and handed him a written request for the appearance of specified witnesses and the identification and copies of other evidence.
>
> 6. Major Hurley appeared surprised and said something to this effect: **"So you are pleading not guilty?" I confirmed that I was.** He said, in that case, he would attempt to produce the requested witnesses and evidence and that I was to report back to him to continue the trial in a specified time period which I believed to have been ten (10) days. Major Hurley said that if he could not produce the witnesses at that time, he would reschedule the proceedings and let me know.

Appellant's testimony at trial, however, was far different. On direct examination, the following colloquy, with emphasis added, took place between the defense counsel and appellant:

> Q: Let's get to the [SCM]. What happened at this hearing?
>
> A: I went to Mosul to the airfield. I met with Major Hurley, who had been appointed as the court-martialing [sic] officer.
>
> Q: How do you know that?
>
> A: Because when I sat down with him, he announced that that is what he was, that he was the [SCM] Officer. He gave me some paperwork to sign and informed me on what date that I would have to appear for the [SCM]. At that time, I presented him with my request for evidence and my witness list.

---

[10] A SCM script is found in the *Manual for Courts-Martial, United States* (2002 ed.) [hereinafter *MCM*], Appendix 9.

> Q: I'm sorry, keep going, Sergeant Williams.
>
> A: He seemed kind of surprised that I was doing that. **He didn't say anything. He said, "I'll see you on" that date that he had put down on the sheet for me to be back for my [SCM].**

Appellant's testimony later continued with the following questioning by the military judge:

> Q: And when you saw Major Hurley, you all sat down and ----
>
> A: He announced that he was going to be the Officer in Charge of the [SCM]. He explained to me what his duties were as far as investigating the charges. He made it real clear that he was not biased in any way because I asked him the question of if he knew about the case or if he had formulated any opinions. He had me sign some paperwork to inform me of what day my [SCM] would be. I gave him the witness list that I requested. I gave him the request for evidence that Captain George had put together for me.
>
> Q: So, he basically apprised you of the rights that you had at the court-martial and when the court-martial would be?
>
> A: Yes, ma'am.

We agree with the military judge that appellant was not arraigned at the SCM. Arraignment occurs when an accused is read the charges and called upon to enter a plea. R.C.M. 904. Both appellant's post-trial affidavit and trial testimony support the conclusion that the SCM officer proceeded consistent with the script found in *MCM*, Appendix 9, for the SCM preliminary proceeding. Clearly the purpose of the meeting was to read appellant the charges, explain the SCM procedures and appellant's rights, and set a future date for the actual trial proceedings — a stage never reached in this case. As noted above, arraignment is not a part of the preliminary proceeding, but rather part of the subsequent SCM trial proceeding. R.C.M. 1304(b)(2); *MCM*, Appendix 9.

Even if we accept appellant's post-trial assertion, that the presiding officer asked him, "*So you are pleading not guilty?*" after appellant handed the presiding officer his witness list (contrary to his assertion at trial that the presiding officer

"*didn't say anything*") this was not an arraignment. Rather, this was a preliminary and informal meeting to establish what would be required for the SCM trial proceeding. We find this to be no different than a military judge requiring counsel to submit a docketing request that includes anticipated pleas and forum, and proposed trial dates. *See* Army Reg. 27-10, Legal Services, Military Justice, para. 5-21 (16 Nov. 2005).[11] As indicated by the lack of a recorder and the informality of the meeting, the purpose of the initial meeting was not to formally call upon appellant to enter pleas, but to properly prepare the presiding officer for what he would need in order to conduct the SCM. *See Jackson,* 41 C.M.R. at 681 (holding that a discussion concerning pleas at an off-the-record R.C.M. 802 session did not constitute an arraignment). *See also*, R.C.M. 904 discussion ("The accused may not be arraigned at a conference under R.C.M. 802.").

We also agree with the military judge that there was no pretrial agreement in this case. Rule for Courts-Martial 705(d)(2) requires "[a]ll terms, conditions, and promises between the parties shall be written. The proposed agreement will be signed by the accused and defense counsel, if any." There was no written agreement in this case. Moreover, there was no meeting of the minds. There was serious disagreement as to a material term — how appellant would plead to the charges. This is not to say, however, as further discussed below, that the convening authority did not make his initial referral decision based upon certain factual assumptions — one being that appellant would plead guilty to the charged offenses.

In claims of retaliatory prosecution for the exercise of Constitutional rights, appellant bears the burden of setting forth at least a *prima facie* case rebutting the "strong presumption that the convening authority performs his duties as a public official without bias." *United States v. Hagen*, 25 M.J. 78, 84 (C.M.A. 1987) (citations omitted). For, "[a]s with a charge of selective prosecution, an accused must show more than a mere possibility of vindictiveness; he must show discriminatory intent." *Id.* Once a *prima facie* case has been made that the convening authority acted vindictively or improperly, then the burden shifts to the government to disprove that claim. *Id.*

Appellant has failed to meet his burden in establishing a *prima facie* case that the charges were withdrawn from the SCM and subsequently re-referred to a general court-martial for a discriminatory purpose. Appellant asserts, *inter alia*, that because no pretrial agreement existed in this case, the convening authority improperly relied upon appellant's failure to abide by the terms of the pretrial agreement as one of the reasons for withdrawing the charges from the SCM and re-referring them to a higher level court-martial.

---

[11] The version in effect at the time of trial is substantially identical. *See* Army Reg. 27-10, Legal Services, Military Justice, para. 5-20 (6 Sept. 2002).

We disagree.  As discussed above, the government withdrew the charges in this case prior to arraignment.  More importantly, even if the existence of a pretrial agreement were relevant, appellant has failed to show discriminatory intent by the convening authority.  The discussion section of R.C.M. 604 specifically lists "reconsideration by the convening authority or by a superior competent authority of the seriousness of the offenses" as an example of a *proper* purpose.  The memorandum for record from the convening authority, dated 23 July 2004, in the allied papers and the trial counsel's testimony clearly explain why the convening authority initially referred this case to a SCM.  That decision was based upon the following facts as understood by the convening authority at the time:  (1) a lack of witnesses willing to testify would make prosecution of the responsible individuals difficult; (2) appellant's rendition of events made him seem like a passive participant in the armed robbery; and (3) appellant would be willing to plead guilty to the offenses and testify against the other participants in the armed robbery.

After SCM referral it became apparent that the convening authority's initial understanding was not accurate.  Based upon SSG Lozano's proffer of expected testimony, it emerged that appellant served a much more prominent leadership role in the armed robbery and subsequent efforts to conceal the crime than trial counsel had been led to believe.  Furthermore, other participants in the armed robbery corroborated SSG Lozano's version and were now willing to testify, thus making appellant's cooperation less important.  Finally, appellant's decision to plead not guilty removed a mitigating factor that had led the convening authority to refer the case to a SCM.  Once the trial counsel informed the convening authority that the factual assumptions used in his referral decision were incorrect, the convening authority reconsidered the seriousness of appellant's offenses and his referral decision.  We do not find this to be an improper purpose.

## CONCLUSION

The findings of guilty and the sentence are affirmed.

Senior Judge OLMSCHEID and Judge GALLUP concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court