UNITED STATES, Appellee

v

EDDIE A. WILLIAMS, Specialist Four,
U. S. Army, Appellant

16 USCMA 589, 37 CMR 209

No. 19,778

March 24, 1967

Captain John Kagel argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent and Major David J. Passamaneck.

Captain Joel P. Schiff argued the cause for Appellee, United States. With him on the brief were Colonel Peter S. Wondolowski, Lieutenant Colonel David Rarick, and Lieutenant Colonel Francis M. Cooper.

Opinion of the Court

FERGUSON, Judge:

On February 26, 1966, the accused was brought to trial before a general court-martial convened at Seoul, Korea, and pleaded guilty to three counts of presenting false claims for pay and al-

lowances to the United States, in violation of Uniform Code of Military Justice, Article 132, 10 USC § 932. He was found guilty and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction. The convening authority approved only so much of the sentence as provided for bad-conduct discharge, forfeiture of $83.00 per month for six months, confinement at hard labor for six months, and reduction. In addition, he probationally suspended the discharge. The board of review, "in light of the administrative and investigative fumbling which characterized this case," further reduced the sentence by approving nothing more than forfeiture of $50.00 pay per month for six months and reduction to the grade of Private E-3. Thereafter, we granted accused's petition for review upon the assigned issues:

"I. APPELLANT WAS DENIED MILITARY DUE PROCESS AND HIS RIGHT TO A SPEEDY TRIAL BY THE 318 DAY DELAY BETWEEN HIS INITIAL ARREST AND HIS TRIAL.

A. VIOLATIONS OF ARTICLES 10 AND 33, UNIFORM CODE OF MILITARY JUSTICE, OCCURRED AFTER APPELLANT WAS PLACED IN RESTRICTION ON 14 APRIL 1965.

B. EVEN IF THE INITIAL RESTRICTION WAS NOT AN ARREST, THE TIME FROM APPELLANT'S CONFESSION UNTIL HIS BEING SERVED WITH CHARGES IS CHARGEABLE AGAINST THE GOVERNMENT IN COMPUTING SPEEDY TRIAL DELAY.

"II. THE BOARD OF REVIEW ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ATTEMPTING TO AMELIORATE ERRORS BELOW BY REASSESSMENT OF APPELLANT'S SENTENCE RATHER THAN BY DRAWING APPROPRIATE LEGAL CONCLUSIONS FROM ITS FINDINGS OF FACTS AND THEREBY DISMISSING THE CHARGE AND SPECIFICATIONS."

The facts surrounding the delay in charging accused and bringing him to trial do not appear to be in dispute. As outlined in the record, they indeed, in the board's words, paint a picture of fumbling and inexcusable inaction while the accused was retained in an overseas command long past his rotation date and kept under pretrial restraint for months prior to any charge being filed against him. Briefly, the circumstances depicted are as follows.

I

On April 14, 1965, the accused's delicts came to the attention of the Criminal Investigations Detachment. As the board of review found, he was restricted to his company area on the same date. On April 16, Williams executed a complete confession to all crimes charged. He was continued in restriction until August 30, 1965.[1] Thereafter, he was apparently released from restraint. On November 9, 1965, charges were preferred. On the same date, accused's pass was removed from the pass box and not returned until January 31, 1966.

On December 17, 1965, the charges were forwarded to the next highest echelon of command, together with a letter seeking to explain the delay in their transmittal.[2] On December 22, 1965, that headquarters forwarded them to the officer exercising general court-martial jurisdiction. As no Article 32 investigation had been conducted, they

---

[1] Some controversy arose between trial counsel and defense counsel over the terminal date of accused's restriction and his status after charges were preferred. This occurred during the out-of-court hearing before the law officer. The matter was not resolved until after findings were returned. Counsel then agreed to the foregoing dates as a part of the personal data relating to the accused. As we are passing on the issue of due process, we likewise adopt them. See United States v Schalck, 14 USCMA 371, 34 CMR 151. We also adopt the board's conclusion accused was restricted to his company area, although the record is in conflict on that subject. See United States v Lamphere, 16 USCMA 580, 37 CMR 200.

[2] The letter, included in the allied papers, simply reflects nothing was done by accused's unit pending receipt of the final Criminal Investigations Detachment report in the case on November 8, 1965.

were returned on December 29. The investigation was completed on January 4, 1966, forwarded on January 7, and returned as deficient in several particulars on January 13. On January 21, 1966, it was once more received by the Staff Judge Advocate at the general court-martial level. On January 31, he rendered his advice recommending trial by general court-martial. The convening authority approved the recommendation on February 1, and directed trial by general court-martial. The case was duly referred to trial on February 8. Charges were served on the accused on February 11. From February 12 until February 24, no law officer was available. On February 26, 1966, trial commenced.

The delay so upset the accused that he apparently attempted suicide and required psychiatric assistance on August 13, 1965. The psychiatrist sought "more support from his unit" for him, and characterized the "'suicide' attempt" as "more an act of desparation [sic]." On October 1, 1965, accused was again examined and found "upset over pending legal action." A recommended leave was denied. Ten minutes after counsel was appointed for accused, he demanded a speedy trial.

The Government's explanation for the delay centers, as well it might, around the period April 14, 1965, to November 9, 1965. The delay, it is said, was occasioned by the belief on the part of criminal investigators that an accomplice had forged signatures in connection with offenses to which accused had confessed as well as with other false claims which had been made. As the accomplice had been evacuated to the United States and other witnesses rotated home, the period was necessary to complete the investigation of these possible forgeries and secure other evidence.

The difficulty with the Government's position is that the Criminal Investigations Detachment knew of the alleged forgeries from the outset of the investigation. Though its agents interviewed accused's accomplice and others involved in April 1965, no attempt was made to secure handwriting exemplars from the accomplice until June 1965 or from accused until October 1965. The former were requested on June 14, 1965, following the accomplice's medical evacuation, and were not accomplished and returned until September 25, 1965. Other requests for information were handled in a similarly lackadaisical fashion. The report itself was completed on October 20, 1965, but was not delivered to the unit commander until November 8, 1965. And suffice it to say that nothing was ever developed which involved accused in the alleged forgeries, nor was he charged with them. Indeed, the Criminal Investigations Detachment was advised as early as June 10, 1965, by the Chief of Military Justice to "close the case on Williams and submit a report . . . [on the accomplice]" separately. The investigators, however, persisted in treating the matter in a unitary fashion. It is not surprising, therefore, that the board of review rejected the similar explanation made to it and found it "unconscionable for an accused to be kept 'under a cloud' for some 318 days in a case of this nature."

## II

We are confronted, therefore, with a case in which, as the board found, an accused was inexcusably restricted to his company area for 138 days before charges were preferred against him. When charges were preferred, his pass was then removed, thereby effectively confining him to his station for a further period of 81 days. The only explanation tendered for the earlier period of restriction, as well as the months intervening between its being lifted and the preference of charges on November 9, is that the unit commander was awaiting completion of the criminal investigation report. And while it is alleged as to the latter that leads regarding alleged forgeries had to be run out, these pertained to accused's supposed accomplice and had little bearing on his confessed guilt of the charges on which he was finally tried. Indeed, investigators were informed of this by the Chief of Military Justice, told to close out their case on Williams, and treat the misconduct of his accomplice separately.

This occurred in June 1965, but the instructions were not followed, and the cases were pursued together until the report was finally completed and delivered on November 8, 1965.

While the inaction following the preference of charges is not as pronounced as the period of almost seven months which preceded it, it, too, offers no model of speed. Failure to comply with correct procedures, lack of any Article 32 investigation initially, holding a deficient one thereafter, and similar practices resulted in a further delay of over three months before charges were finally served on the accused and the case readied for trial. Thus, as defense counsel point out, in a simple case, the exorbitant period of over ten months expired prior to accused's trial.

In United States v Schalck, 14 USCMA 371, 34 CMR 151, we pointed out that the "issues of speedy trial and denial of due process are frequently inextricably bound together and the line of demarcation is not always clear." In that case, accused spent ninety-six days in confinement without charges being preferred against him. The board of review summarily dismissed the charges on the basis that such constituted not only a violation of Code, supra, Articles 10 and 33, 10 USC §§ 810, 833, but also a denial of due process. We held the board of review's premise correct, but set aside its dismissal of the charges and remanded the case for a rehearing on the basis that, as the issue was first raised on appeal, there remained numerous factual issues on which the Government was entitled to be heard and which were better resolved at "a level where testimony can be taken, witnesses examined, and testimony offered in rebuttal." *Schalck*, supra, at page 374. Here, that situation does not exist, for the question was litigated below and the evidence fully developed.

The Government seeks to avoid the effect of such proof by asserting that, as the accused was not in arrest or confinement prior to trial, Code, supra, Article 33, is not applicable. Hence, it argues, there was no need, in the terms of the statute, to prefer and forward the charges within eight days or to offer a reasoned explanation for its inaction. In sum, it urges it is not responsible for the long period of delay prior to preference of the charges. We disagree.

The accused was, as agreed by counsel at the trial and found by the board of review, placed in restriction █ to his company area. Code, supra, Article 9, 10 USC § 809, defines the status of arrest as "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits." That is precisely the form of restraint imposed on Williams, and the fact that it was labeled "restriction" does not change his status in fact. Indeed, in United States v Haynes, 15 USCMA 122, 35 CMR 94, a unanimous Court pointed out, at page 124:

". . . Restriction to quarters or to barracks is in fact arrest ' "and the designation of the restraint as restriction would have no effect." ' United States v Biot, United States v Vaughan, both supra."

The Government, therefore, is fully chargeable for the restraint imposed upon accused from April 14, 1965, to August 30, 1965. Moreover, it clearly violated the mandate of Code, supra, Article 10, requiring, when an individual is placed in arrest or confinement, that *immediate steps* shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." (Emphasis supplied.)

In lieu of performing its duty, the Government did nothing and, as a result, the accused languished in his company for 138 days before he was released from restraint. Restraint again imposed on him for 81 additional days by removing his pass privileges was found by the board to have the effect of a restriction. The case was simple and the evidence gathered soon after inception of the investigation. Yet, nothing was done to insure compliance with codal and constitutional mandates regarding speedy trial. The stark declaration at trial of accused's battalion

adjutant that he "was unfamiliar with the regulation that states you must give your full attention to these things" epitomizes what occurred here. We accordingly find, under the circumstances of this case, that accused was denied military due process and his right to the speedy disposition of charges against him.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The charges are ordered dismissed.

Chief Judge QUINN and Judge KILDAY concur.