UNITED STATES, Appellee

v

LARRY A. BURTON, Specialist Four, U. S. Army, Appellant

21 USCMA 112, 44 CMR 166

■

No. 24,071

December 17, 1971

■ ■ ■

*Captain J. Houston Gordon* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Lieutenant Colonel Charles W. Schiesser, Major Alan W. Cook,* and *Captain Stewart Pettet Davis.*

*Captain Merle F. Wilberding* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain David E. Wilson,* and *Captain John F. Cooney, Jr.*

## Opinion of the Court

DARDEN, Chief Judge:

The Court granted two issues resulting from a general court-martial conviction of Specialist Four Burton for two assaults and violation of a general regulation.

We address first the contention that the pleas of guilty were improvident. The foundation for this contention is that in informing Specialist Burton of the rights his guilty plea waived, the military judge failed to comply with this Court's decision in United States v Care, 18 USCMA 535, 40 CMR 247 (1969). The *Care* opinion declares:

"Further, the record must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea. Boykin v Alabama, supra. Based upon the foregoing inquiries and such additional interrogation as he deems necessary, the military trial judge or president must make a finding that there is a knowing, intelligent, and conscious waiver in order to accept the plea." [*Id.,* at pages 541–542.]

The providency inquiry in this case was conducted only a few days after our guidelines in *Care* applied to other cases. The inquiry covers some eight pages of the record. The appellant contends that nowhere in the inquiry did the military judge inform the appellant that the latter's plea waives his right against self-incrimination, that such a plea waives a trial of the facts by a court-martial, and that the plea waives the right to confront the witnesses against him.

At the time the judge conducted the inquiry into the providency of the plea he had already questioned the appellant about the latter's election to be tried by military judge alone instead of by a military jury. In connection with his explanation of the consequences of that election, the judge fully explained to the appellant that the latter had the right to have his guilt or innocence decided by a military jury. The analogy between this advice and the *Care* requirement for information about the right to trial of the facts by court-martial is not exact, but this advice does tend to reassure us that the appellant knew of his right to have a jury decide his guilt.

The military judge did not use the words "self-incrimination" and he did not use the words "confront the witnesses" that appear in the *Care* opinion. The military judge did declare, however, that the accused had the right to plead not guilty and that if he pleaded not guilty the Government had the burden of proving his guilt beyond a reasonable doubt. The judge also explained that in providing such proof the Government must come forward with "evidence" and that the appellant had the right to confront that "evidence." As appellate defense counsel point out, "evidence" is a broad term covering not only testimony but real evidence as well. We agree that the term is not synonymous with "witnesses," but it is a more inclusive term. The judge's use of this word instead of "witnesses" is not enough for us to declare the plea improvident.

Similarly, implicit in the judge's explanation about the appellant's right to plead not guilty and the Government's burden if he did so is the thought that the appellant was not required to provide any of the proof of his guilt.

At the time of the trial the appellant was 23 years old, he had completed two years of college, and his intelligence test scores placed him in the "bright" to "superior" range. We therefore have no reason to believe that he misunderstood the significance of the military judge's questions.

The inquiry the judge conducted here is far from an exemplary compliance with what we had in mind in *Care*. Our *Care* opinion represented our attempt to apply to military trials the same providency inquiry objectives enunciated by the Supreme Court of the United States v McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166 (1969), and Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969). Currently, most military judges appear to be conducting these inquiries in an admirable way. The combination of all the circumstances obtaining here causes us to conclude that the appellant's plea was informed and voluntary within the meaning of *McCarthy, Boykin,* and *Care*. We believe no useful purpose would be served by reversing because the judge's phraseology did not exactly duplicate that of the *Care* opinion.

The second issue relates to a speedy trial. The appellant did not raise this issue in his pleadings before the United States Army Court of Military Review or in his petition for grant of review by this Court. Instead, we specified the speedy trial issue in our grant of review of the case.

On a speedy trial issue, the Government's accountability runs from the date the accused is restrained or from the date of the "formal presentment" of charges, whichever is earlier. United States v Williams, 16 USCMA 589, 37 CMR 209 (1967), and United States v Williams, 12 USCMA 81, 82, 30 CMR 81 (1961). In this case, the date of charges and the date of confinement are the same, May 9, 1969.

The offenses for which the appellant was tried allegedly occurred in Vietnam on December 20, 1968. The trial occurred on October 7, October 29, and November 21, 1969.

The investigating officer held an Article 32 hearing on June 4, 1969, after having received the case on May 14. Other persons at Fort Dix, New Jer-

sey, with responsibilities for military justice had sought from the Army World Wide Locator Service the present location of the witnesses who had been in Vietnam at the time of the offenses. They also requested from Vietnam a copy of the directive the appellant allegedly violated. On May 27, the Army personnel office in St. Louis responded that the witnesses were still in Vietnam, still assigned to the same units. Efforts to secure a copy of the Vietnam directive continued after the Article 32 hearing on June 4.

The investigating officer received copies of the directive from Vietnam on July 3. Although the progress from that date until September 2, the date the commanding general referred the case for trial by general court-martial, was not fast, it was not so slow as to indicate either gross negligence or callous indifference. One of the longer delays in this period was attributable to discovery of the need for amending the charges in order that they adequately allege offenses.

Looking back, one is tempted to say that a month could have been saved by proceeding only with the more serious charges of assault. The Manual for Courts-Martial, United States, 1969, provisions, however, prescribe the general rule that all charges against an accused should be tried at a single trial (paragraphs 30*g* and 33*h*), subject to the qualification that charges for minor derelictions should not be joined with charges for serious offenses. Paragraph 26*c*, Manual, supra. The directive in question concerns possession of unauthorized privately-owned weapons. We cannot say that this was a minor dereliction of the kind paragraph 26*c* contemplates.

In the absence of a pretrial confinement so long as to be wholly unreasonable and inexplicable or of ■ other circumstances constituting prejudice per se, the Government may show that Burton has not been harmed by the delay. See United States v Pierce, 19 USCMA 116

225, 41 CMR 225 (1970); United States v Broy, 14 USCMA 419, 34 CMR 199 (1964); United States ex rel Solomon v Mancusi, 412 F2d 88 (CA 2d Cir) (1969); United States v DeLeo, 422 F2d 487 (CA 1st Cir) (1970), certiorari denied, 397 US 1037, 25 L Ed 2d 648, 90 S Ct 1355 (1970); Harling v United States, 401 F2d 392 (CA DC Cir) (1968), certiorari denied, 393 US 1068, 21 L Ed 2d 711, 89 S Ct 725 (1969).

Instead of relying on a presumption of prejudice, defense counsel in this case allege specific prejudice in that (1) the psychiatrist and the psychologist who examined the appellant were hindered in their diagnoses because of the delay; (2) the witnesses were unavailable until the actual trial; and (3) a change in the appellant's trial defense counsel was required.

We consider first the claim about the handicap in the mental examination. At trial, defense counsel attempted an offer of proof that if the psychiatrist and psychologist could have examined the appellant earlier their diagnoses would have been more certain. The judge elected to notice judicially that the more time that elapses between an offense and the date of a mental examination, the more difficult is a diagnosis of a mental condition existing at the time of the offense. Government counsel point out that the psychiatrist examined the appellant on August 29 and September 5, 1969, that the psychologist examined him on October 20, 1969, and that there is no showing that the lateness of these examinations resulted from the delay in the trial. The psychiatric and the psychological testimony was offered only in extenuation and mitigation. The testimony of the psychiatrist fails to reflect any uncertainty of his diagnosis. The psychologist testified he was very confident in his diagnosis. Since the appellant was constantly available at Fort Dix from May 9, the examinations these officers conducted apparently could have been made at any time after that date and the lateness of the examination seems

unrelated to the slowness in the processing of the case.

After the witnesses were brought from Vietnam for the trial, the appellant requested a continuance to complete his interviews of them. A continuance for that purpose probably would have been necessary even if the trial had been reached as fast as possible. While memories of events are undoubtedly affected by the lapse of 10 or 11 months, here no suggestion of unreliability appears.

A change in trial defense counsel also occurred. Captain Denison began the defense and Captain Bevan completed it. The record fails to show any objection by the appellant to Captain Denison's not completing the defense or that the appellant opposed having Captain Bevan defend him. The appellant stated on the record that he wished Captain Bevan to represent him.

After hearing all the evidence the military judge commented on the "several periods of inactivity for which no one should be happy," but concluded that the Government moved "within reasonably diligent limits." Making some allowance for the complications resulting from trial in the United States for offenses committed overseas, we find that the judge's determination was not so unreasonable as to require reversal.

We are deeply concerned, however, by another aspect of this case. On three occasions beginning on June 2, 1969, the defense counsel moved for a prompt disposition of the charges. The appellant received no response to any of the three motions. The investigating officer apparently placed the first motion in the file and forgot about it until September. Failure of the investigating officer and his superiors to furnish the appellant and his counsel a response to their motion for a prompt trial is more than discourteous, it is a neglect of duty. When the defense alertly avoids what ▮▮▮▮▮ ▮ could otherwise be a waiver of the speedy trial issue by urging prompt trial, the Govern-

ment is on notice that delays from that point forward are subject to close scrutiny and must be abundantly justified. Although we consider inexcusable the neglect in not responding to the request for speedy trial with at least an explanation of why the request was denied, we are satisfied in this case that if we construe the failure to respond as a denial, the denial was based on reasonable grounds.

Appellate defense counsel urge us to promulgate new guidance for determining compliance with the speedy trial provisions of the Sixth Amendment and Articles 10, 30(b), and 33, Uniform Code of Military Justice, 10 USC §§ 810, 830, and 833.

In United States v Hounshell, 7 USCMA 3, 21 CMR 129 (1956), this Court stated that Article 10 of the Code reiterated the speedy trial guarantee of the Sixth Amendment. An obvious question is whether the Sixth Amendment requires a more prompt trial than does Article 10. Many decisions of the Article III courts applying the constitutional speedy trial guarantee deal with delays of several years between indictment and trial, typically with the defendant free on bail. See, e.g., United States v DeLeo, supra, and cases cited in United States ex rel Solomon v Mancusi, supra. These decisions provide little assistance in deciding whether immediate steps have been taken to try an accused member of the armed forces who has been confined before trial. We assume for present purposes that the requirements of Article 10 are more rigorous.

In some situations the length and circumstances of pretrial confinement can be prejudicial in themselves. ▮▮▮▮▮▮ ▮ selves. United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969). In the ordinary case, however, the time between confinement and trial is only one of the factors to be considered. United States v Hawes, 18 USCMA 464, 40 CMR 176 (1969). As applied by Article III courts, these other factors are (1) the reasons for the delay; (2)

prejudice to the accused; and (3) whether the accused waived his rights. See United States ex rel Solomon v Mancusi, supra.

The opinion in *Hounshell*, supra, reviewed the legislative history of Article 10 and concluded that Congress had not adopted the practice of some States under which an accused is automatically discharged if he is not brought to trial within a specified time after being charged. That history remains unchanged. For that reason we are hesitant to apply rigid time limits. Each case still must depend on its own facts and circumstances. See United States v Goode, 17 USCMA 584, 586, 38 CMR 382 (1968).

For offenses occurring after the date of this opinion, however, we adopt the suggestion of appellate defense counsel that in the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed.[1]

Similarly, when the defense requests a speedy disposition of the charges, the Government must respond to the request and either proceed immediately or show adequate cause for any further delay. A failure to respond to a request for a prompt trial or to order such a trial may justify extraordinary relief. See Petition of Provoo, 17 FRD 183, 200 (1955), affirmed, 350 US 857, 100 L Ed 761, 76 S Ct 101 (1955).

The decision of the Court of Military Review is affirmed.

Judge QUINN concurs.

---

FERGUSON, Senior Judge (dissenting):

I dissent.

The departure in this case from the mandate of United States v Care, 18 USCMA 535, 40 CMR 247 (1969), indicates that the procedure for determining the providence of guilty pleas has been virtually abandoned in favor of searching the record for bases from which inferences may be drawn to establish the accused's knowing, intelligent, and conscious waiver of important rights. I regard it as a repudiation of the Care doctrine and indicative of a disregard for essential procedural rights with which I cannot agree. Accordingly, I herewith record my disagreement with my brothers' decision.

In like manner, I believe this accused's right to a speedy trial under the Uniform Code of Military Justice was summarily denied him. Even my brothers find little excuse for the delay involved and none for the arbitrary failure of the convening authority on three occasions to reply to defense counsel's requests for speedy disposition of the charges. I, therefore, cannot agree with their conclusion that the military judge correctly refused to dismiss the charged crimes on this basis.

I

As to the guilty plea proceedings, it appears from the record that the military judge explained the nature and effect of the pleas, the elements of the offenses, the maximum sentence, inquired into the terms of a pretrial agreement with the convening authority, and generally concerned himself with the voluntariness of the accused's action. However, he at no time informed the accused that his pleas waived his rights against self-incrimination, to confrontation, and to a trial of the facts, nor did he enter any find-

---

[1] At this time we need not determine whether the provisions of Article 10, Uniform Code of Military Justice, 10 USC § 810, are so coterminous with the Sixth Amendment right to a speedy trial as to make dismissal of a charge for violation of the Article subject to the same consequences as dismissal of a charge for violation of the constitutional provision. See United States v Boehm, 17 USCMA 530, 38 CMR 328 (1968).

ing that the accused had made a knowing, conscious, and intelligent waiver thereof. In lieu of the latter, he merely noted his acceptance of the pleas and immediately entered the findings of guilty, based thereon.

In United States v Care, supra, this Court declared—quite without reservation—at page 541:

"In any event, the record of trial for those courts-martial convened more than thirty days after the date of this opinion must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty. United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Donohew, 18 USCMA 149, 39 CMR 149. This requirement will not be satisfied by questions such as whether the accused realizes that a guilty plea admits 'every element charged and every act or omission alleged and authorizes conviction of the offense without further proof.' A military trial judge or a president personally addressing the accused to explain the elements of the offense with which he is charged and to question him about his actions and omissions should feel no obligation to apologize or to disclaim any intent that his actions reflect on the competence of the accused's counsel. We believe the counsel, too, should explain the elements and determine that there is a factual basis for the plea but his having done so earlier will not relieve the military trial judge or the president of his responsibility to do so on the record."

The opinion then added:

"Further, the record must also demonstrate the military trial judge or president personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea. Boykin v Alabama, . . . [395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969)]. Based upon the foregoing inquiries and such additional interrogation as he deems necessary, the military trial judge or president must make a finding that there is a knowing, intelligent, and conscious waiver in order to accept the plea."

*Care,* supra, was not decided in a vacuum. As early as United States v Brown, 11 USCMA 207, 29 CMR 23 (1960), we were faced with the problem of insuring that the accused's pleas of guilty were provident and voluntary and that such appeared as a matter of record when they were received. In that case, for differing reasons, the Court, as then constituted, found a *pro forma* recital of the accused's rights to be a sufficient basis on which to establish providence in the face of post-trial attacks. I dissented, and, extensively reviewing the legislative history of the Code, pointed out that Congress had noted, in authorizing the acceptance of pleas of guilty, that it expected law officers (now military judges) to make certain inquiries of the accused in every guilty plea case. Such included advice that the plea admitted the offense as charged and made conviction mandatory; the sentence to which accused might be subjected; and that, unless the accused admitted doing the acts charged, his plea must be rejected. United States v Brown, supra, at page 215; House Report No. 491, 81st Congress, 1st Session, pages 23, 24.

In suggesting the adoption of this congressionally intended procedure, not only did I have in mind the protection of an accused—faced on the one hand with the possibility of conviction and, on the other, with the tempting offer of a clement sentence

**119**

from the convening authority upon his agreement to enter a plea to the charges—but also with the myriad of post-trial attacks leveled on pleas of guilty at the appellate level. Indeed, I noted therein, at page 215, that an "extended examination of the accused along these lines insures providence upon the record and gives the lie to his later claims of impropriety."

In United States v Chancelor, 16 USCMA 297, 36 CMR 453 (1966), the procedure which I suggested in my dissent in *Brown,* supra, became the law of the Court. In that case, we reversed, noting that the accused, except for his plea of guilty, "has from the outset of these proceedings maintained his innocence." We concluded by declaring:

". . . Should the procedure be adopted throughout all the services, we believe the haunting issue of improvident pleas would become rare indeed and, as Mr. Larkin declared, 'would have the added advantage of settling once and for all that he (the accused) is the man who did what he is charged with doing.'" [*Chancelor,* supra, at page 300.]

Thereafter, the Supreme Court examined the same problem in connection with guilty plea inquiries under Rule 11, Federal Rules of Criminal Procedure. In placing the duty on Federal judges to make full inquiry into the accused's pleas of guilty and to insure their providence, it noted in McCarthy v United States, 394 US 459, 22 L Ed 2d 418, 89 S Ct 1166 (1969), at page 466:

". . . A defendant who enters such a plea [of guilty] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' . . . *Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been*

*obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."* [Emphasis supplied.]

Subsequently, in Boykin v Alabama, 395 US 238, 23 L Ed 2d 274, 89 S Ct 1709 (1969), in reversing a state conviction wherein no plea inquiry was made, the Supreme Court declared:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be sought . . . and forestalls the spinoff of collateral proceedings that seek to probe murky memories." [*Boykin,* supra, at page 243.]

As noted above, it was with these authorities in mind that we issued our mandate in *Care,* supra, setting forth the requirements of an adequate inquiry into guilty pleas. In short, not only did we make the *Chancelor,* supra, inquiry mandatory but added thereto the constitutional inquiries and requirement for a finding of a knowing, intelligent, and conscious waiver of the accused's constitutional rights.

Despite the fact that this case was tried after the effective date of our directions in *Care,* supra, the mandatory inquiries laid down therein were not made, nor is there any adequate basis on the record for concluding that the accused made a knowing, conscious, and intelligent waiver of his right against self-incrimination, to confrontation of the witnesses against him, and to a trial of the facts. Finally, there is no judicial determination that he had done so. McCarthy v United States, supra. In sum, despite the Court's direction, this military judge simply chose to ignore United States

v Care, and make little more than the sort of perfunctory inquiry which we had previously condemned in United States v Chancelor, supra. Thus, we are faced again with a situation in which providence of the accused's pleas is not shown on the record.

The importance of these procedural steps cannot be overemphasized, particularly in military law, when an accused is faced with charges before a court-martial, far from home and friends, is represented by military counsel, tried by his superiors, and is usually faced with a tempting offer for a greatly reduced sentence in return for not contesting the case against him. Such "bargain justice" itself demands the most meticulous inquiry into the providence of the pleas to ascertain that the accused had not merely bartered away his rights out of fear of the consequences. That such fear is not illusory, one need only refer to the facts in *Chancelor*, supra, and United States v Henn, 13 USCMA 124, 32 CMR 124 (1962), and United States v Richardson, 15 USCMA 400, 35 CMR 372 (1965).

How, then, do my brothers find compliance with *Care*, supra, or distinguish it from the case here presented?

First, they refer to the judge's earlier advice to the accused regarding the consequences of his choice between trial by military judge alone and trial by a full court as effectively advising him of his right to a trial of the facts. Secondly, from the *pro forma* explanation of the accused's right to plead not guilty and thereby placing the burden upon the Government of establishing his guilt beyond a reasonable doubt, by coming forward with the evidence, which he would have the right to confront, an adequate explanation of the right to confrontation is found. Finally, the same explanation is relied upon to inform the accused that he need not produce any evidence against himself. I cannot agree that these formal statements, gathered from the whole record, are sufficient to form the basis for a knowing, conscious, and intelligent waiver of the rights involved.

First, the explanation of the distinctions between trial by judge alone and a full court deals merely with a choice of forum in which the issues would be determined. It has nothing to do with the accused's entitlement to a trial on the facts. In either instance, as the judge pointed out, his guilt would be determined on the one hand, by the judge himself, on the other, by a court-martial made up of five or more members. Such is not sufficient to demonstrate "an intentional relinquishment or abandonment of a known right or privilege." Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 1466, 58 S Ct 1019 (1938).

In like manner, the conclusory declaration that the accused had the right to meet the Government's evidence is insufficient, in my view, to advise him that he may confront the witnesses against him—that they must appear and face his cross-examination. And, finally, nowhere can any real foundation be discovered that the accused was informed that his plea of guilty required him to incriminate himself and that, it, in and of itself, constituted a waived of his right against self-incrimination, to a trial of the facts, and to confront those who would otherwise appear against him.

In sum, this is not a case in which reversal is demanded "because the judge's phraseology did not exactly duplicate that of the *Care* opinion," but because he failed to comply with *Care*, supra, in the most elementary fashion, leaving us to speculate as to whether the accused "possesses an understanding of the law in relation to the facts" (McCarthy v United States, supra, at page 466), and making no judicial finding as to the accused's knowing, conscious, and intelligent waiver of his rights. Such amounts to an abandonment of the *Care*, supra, mandate, and a reversion once more to the *pro forma* inquiries made prior to that decision. In the military atmosphere of "bargain justice," I suggest we will find ourselves once more

faced with cases requiring decisions as to providence to be made on inadequate records, post-trial affidavits, and allegations of improvidence made long after trial when memories have grown dim. All this can be avoided by strict enforcement of the procedure laid down in *Care*, supra, and acceptance of no inferential substitute therefor. As the importance of that decision is buttressed by the constitutional holdings of the Supreme Court in McCarthy v United States and Boykin v Alabama, both supra, I would demand adherence to its mandate. As my brothers wholly depart therefrom, I record my dissent to their position.

## II

Turning to the issue of speedy trial, and the military judge's denial thereof, I likewise disagree with the author of the majority opinion's disposition of that question.

For offenses committed in Vietnam in December 1968, the accused was charged and confined at Fort Dix, New Jersey, on May 9, 1969. Despite the mandate of Article 33, Uniform Code of Military Justice, 10 USC § 833, that charges be forwarded within eight days, the file did not come to the officer exercising general court-martial jurisdiction until 63 days later, on July 29, 1969. Accused was ordered tried by general court-martial on August 21, 1969, by the convening authority, but such was not formally directed until September 2, 1969. Trial commenced on October 7, 1969, and, due to later continuances, sentence was not actually adjudged until November 21, 1969. All in all, the accused spent 149 days in confinement awaiting commencement of his trial. During the interim period, pretrial defense counsel made three demands for speedy disposition of the charges, and was not even accorded the courtesy of a reply.

In attempting to explain the delay, the trial counsel produced the pretrial investigating officer, who testified that he received the file on May 14, 1969, and that the investigation was de-

layed because the charges involved violations of United States Army, Vietnam, directives, copies of which he could not obtain until July 3, 1969. The investigation was returned to him on July 11, in order that he might insert a chronology of the events which he had undertaken. Records of the accused's unit indicate that the pretrial investigation was not handed in until July 17, and not forwarded until July 28. On August 8, it was returned for correction of the charges and once more forwarded to the staff judge advocate on August 16.

It was also stipulated that an undated telegram had been sent to Vietnam requesting copies of the pertinent directives.

Although the burden was not on him to do so, the accused sought to show actual prejudice to his case through the long delay, as affecting the recollection of the witnesses involved, the effect on expert determinations as to his psychiatric condition at the time of the offenses, and the fact that such resulted in the relief of his original appointed defense counsel and substitution of another officer. See United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962).

It is to be conceded that brief periods of inactivity do not, in and of themselves, constitute a denial of speedy trial. United States v Tibbs, 15 USCMA 350, 35 CMR 322 (1965). The burden, however, is on the Government to demonstrate that it has proceeded with reasonable diligence. United States v Brown, 10 USCMA 498, 28 CMR 64 (1959). Where there is long delay, with no explanation proffered, reversal is required. United States v Williams, 16 USCMA 589, 37 CMR 209 (1967); United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964). And administrative bungling is certainly not an adequate explanation. United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970); United States v Parish, 17 USCMA 411, 38 CMR 209 (1968).

That is precisely what occurred in this case. Although the accused was

placed in confinement on May 9, no effort was made to comply with the mandate of Code, supra, Article 33, by either forwarding the charges within eight days to the officer exercising general court-martial jurisdiction or explaining the reasons for the delay. Despite the fact that the accused's counsel made repeated demands for speedy disposition of the charges, his requests went unanswered, the command being content to sit idly by until copies of the Vietnam directives could be received, in answer to an undated telegram. Moreover, even after this period had expired, it took accused's unit from July 17 until July 29 to forward the record of proceedings to the officer exercising general court-martial jurisdiction, even though he commanded the base on which they were located. Cf. United States v Parish, supra. Though corrections for the charges were required, urgency was not inspired by accused's requests for their disposition, and it was not until August 21 that they were finally presented to the convening authority. Even though he immediately directed trial, again the formalization of that simple direction occupied eleven days!

In short, the Government demonstrated not duly proceeding with prosecution in this case, but the opposite—a complete disregard for the most elementary rights of the accused under Articles 10 and 33, Code, supra, 10 USC §§ 810, 833, and offered no explanation for the delay. As the appellate defense counsel point out, the Government has failed as a matter of law to explain the reasons for the long delay in this case, and reversal should follow. United States v Brown, supra.

Indeed, the whole attitude toward this case by the authorities at Fort Dix, charged with the administration of military justice, is shown by the fact that, although the sentence was adjudged on November 21, 1969, the action of the convening authority was not taken until May 1, 1970, over six months later—and this in a case involving a guilty plea! The Court of Military Review did not act thereon until February 11, 1971, and we now complete our review in December 1971, over two years after the accused was tried.

Omitting the appellate delay, and based solely on the unexplained failure to comply with the mandates of the Code, I would reverse for denial of a speedy trial and order the charges dismissed. As my brothers disagree, I herewith respectfully record my dissent from their affirmance of the findings and sentence herein.