UNITED STATES, Appellee

v

FRED M. SLOAN, Private, U. S. Army, Appellant

No. 27,171

UNITED STATES, Appellee

v

JEFFREY B. GILL, Private, U. S. Army, Appellant

No. 27,267

UNITED STATES, Appellant and Cross-Appellee

v

MICHAEL J. HATTON, Private, U. S. Army, Appellee and Cross-Appellant

No. 27,215

February 15, 1974

·Captain Clifford W. Perrin, Jr., argued the cause for Appellant (No. 27,171); Captain Allen K. DuBois argued the ·cause for Appellant (No. 27,267); Captain John T. Willis argued the cause for Appellant (No. 27,215). With them on the briefs were Colonel Arnold I. Melnick, Major H. M. Hougen, and Captain T. Barry Kingham.

Captain Robert C. Roth, Jr., argued the cause for Appellee, United States. With him on the briefs were Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Major Thomas P. Burns, III, and Captain James G. Yaeger.

## OPINION OF THE COURT

QUINN, Judge:

The common question in each of these three cases, which were consolidated for argument and disposition, is the effect of the failure of the accused to object at trial to a delay in bringing him to trial in excess of 3 months, a period which this Court held would presumptively constitute a violation of Article 10, Uniform Code of Military Justice, 10 USC § 810, and require dismissal of the charges. United States v Burton, 21 USCMA 112, 118, 44 CMR 166, 172 (1971). In *Sloan* and *Gill* separate panels of the U. S. Army Court of Military Review held that the accused's failure to object barred him "from raising the issue at the appellate level." In *Hatton,* a third panel of the court held that failure to object at trial did not bar appellate consideration of the matter, but the appropriate remedy was not dismissal of the charges but return of the case to the trial level for a "limited rehearing as to the circumstances of the delay on the issue of whether there was a denial of a speedy trial."

In material part, Article 10 of the Uniform Code provides that when an individual is placed in pretrial arrest or confinement, "immediate steps shall be taken . . . to try him or to dismiss the charges and release him." Delay in bringing an incarcerated accused to trial may adversely affect both the accused and the military community. The unavailability of the accused for duty may impair the efficiency of a command and his confinement may have a destructive effect upon his potential for rehabilitation. At the same time, delay can work to an accused's advantage. Prosecution witnesses may become unavailable or forgetful and, in the military, delay may serve to insulate the accused from dangerous or onerous duties. As a result, "Delay is not an uncommon defense tactic." Barker v Wingo, 407 US 514, 521 (1972). It may have nothing to do with the question of the accused's guilt, and it may not affect the accused's ability to defend himself. United States v Boehm, 17 USCMA 530, 535, 38 CMR 328, 333 (1968). Prejudice to the interests served by the requirement for a speedy trial is not therefore determined only by measuring the length of time required to bring the accused to trial. Each case requires a functional analysis of its own circumstances. Barker v Wingo, supra; United States v Freeman, 15 USCMA 126, 129, 35 CMR 98, 101 (1964). In consequence, courts and legislatures have sought to establish general guidelines to encourage the timely disposition of cases in which the accused is subject to restraint upon his liberty before trial. In that endeavor, this Court adopted a rule deemed promotive of the interests of the military community and the accused in achieving a timely trial. In United States v Burton, supra at 118, 44 CMR at 172, we said:

> [I]n the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed.

■ *Burton* does not command automatic dismissal of charges if the accused is not brought to trial within 3 months of pretrial confinement or arrest. On the contrary, it expressly reaffirmed the analysis of the legislative history of Article 10 set out in United States v Hounshell, 7 USCMA 3, 21 CMR 129 (1956), and it concluded, as *Hounshell* did, that "Congress had not adopted the practice of some States under which an accused is automatically discharged if he is not brought to trial within a specified time after being charged." United States v Burton, supra at 118, 44 CMR at 172. What *Burton* postulated was a presumption of prejudicial noncompliance with Article 10 as to an accused subjected to pretrial deprivation of freedom predicated upon the fact that he was not brought to trial within 3 months of the imposition of the pretrial restraint. Appellate defense counsel in each case contend that this presumption imposes upon either the trial judge or Government counsel the duty to establish diligence in bringing the accused to trial before the case can proceed to the question of guilt. This contention was rejected by the Court of Military Review in *Sloan* and

*Gill.* In *Sloan,* the court held that *Burton* did not require the Government to "tilt . . . with . . . [a] nonexistent issue;" therefore, if, at trial, the accused did not object to the time required to bring him to trial, such objection would not be considered on appeal, in the absence of a compelling reason to disregard the accused's failure to object at trial.

*Burton* considered the effect of the expiration of more than 3 months between the imposition of pretrial restraint and trial in two situations. In one, the Court expressly indicated that the accused must activate the Government's obligation to explain its processing of the case; in the other, the Court was not as explicit, but it still left no doubt that the accused had to call the Government to account. Addressing a situation in which 3 months elapsed without trial, the Court recognized that an incarcerated accused might do nothing, but if he *"requests a speedy disposition of the charges,"* then, said the Court, "the Government must respond to the request and either proceed immediately or show adequate cause for further delay." 21 USCMA at 118, 44 CMR at 172 (emphasis added). If the Government failed in either respect, the accused could apply for "extraordinary relief." *Id.* The other situation in which the question of delay could be raised was at the trial. Here, the requirement for initiatory action by the accused is not spelled out as specifically as it is in the discussion of pretrial consideration of the issue, but the separate references to United States v Goode, 17 USCMA 584, 38 CMR 382 (1968), United States v Boehm, and United States v Hounshell, supra, convey the same idea that the government's obligation to show diligence in prosecution arises as a response to objection by the accused.

In *Goode* and *Boehm,* the accused moved to dismiss the charges against him because of undue and unexplained delay. In *Hounshell,* no such objection was interposed; we held that if the accused "goes to trial without making any objection to the lapse of time . . . he cannot complain of the delay after he has been convicted." 7 USCMA at 6, 21 CMR at 132.

■ As *Burton* recognized, an accused has two chances to challenge the time required to bring him to trial. He can initiate the challenge before trial, or he can wait until the trial. If he does nothing before trial, his inaction alone will not bar him from raising the matter at trial, Barker v Wingo, supra at 528–9, but if he does not object at trial, the Government need not, as the Court of Military Review said in the *Sloan* case, "tilt . . . with . . . [a] nonexistent issue." *Burton* thus echoed the statement in the Manual for Courts-Martial, United States, 1969 (Rev.) that "Objections based on the lack of speedy trial may be waived by a failure to make a timely motion to dismiss the affected charges." MCM, paragraph 68*i.* It also paralleled the general practice in the federal civilian courts. Rule 8, Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 1971, 28 USCA Rules Appendix at 65, 67 (1973) (now superseded by individual U. S. District Court Rules of the same nature); see Rules 5–7, Plan for Achieving Prompt Disposition of Criminal Cases, U. S. District Court for the Southern District of New York, effective April 1, 1973; United States v Handel, 464 F. 2d 679, 681 (2d Cir. 1972); United States v Kaye, 334 F Supp. 326 (ED NY 1971). See also Fed R Crim P 12; Davis v United States, 411 US 233 (1973).

We have held that a plea of guilty does not deprive an accused of "the protections accorded to him by Article 10" but in many of the cases in which the statement was made, the accused moved before he entered his plea to dismiss the charges because of untimely prosecution. United States v Tibbs, 15 USCMA 350, 353, 35 CMR 322, 325 (1965); see United States v Goode, supra. In other cases, the issue had been treated as viable by the Court of Military Review. United States v Jennings, 17 USCMA 114, 37 CMR 378 (1967); United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964). In some cases, the appellate court examined the matter on its own initiative; in agreement with the Court of Military Review in *Sloan,* Government counsel contend these are instances in which the delay was "so egregious as to amount to a violation of due process of law." We need not review all the speedy trial cases to determine classifications for re-

view. Suffice it, that none of the several categories relied upon to justify disregard of the failure to raise the issue at trial are present in the cases before us.

In *Sloan,* the interval between confinement and trial was 125 days. However, before the Court of Military Review, the accused conceded, and the court found, that 34 days of the period were directly attributable to the defense because it had requested a continuance. Subtraction of this interval reduced the time between the imposition of pretrial confinement and trial to 91 days. The failure of qualified counsel to challenge at trial the propriety of even this period may have resulted "from a recognition that the delay was perhaps beneficial to the accused." United States v Pierce, 19 USCMA 225, 227, 41 CMR 225, 227 (1970). In any event, that period of accountability does not impress us as being so long or so oppressive as to compel a conclusion that disregard of the accused's failure to object at trial is essential to prevent a miscarriage of justice. Nor is there any contention that defense counsel's conduct in this regard was so inept as to deny the accused effective assistance of counsel. As to *Hatton,* the period of alleged delay is 98 days. Here, too, we are satisfied that the record of trial demonstrates that a miscarriage of justice would not result from taking cognizance of accused's failure, before conviction, to object to the time the Government took to bring him to trial. That conclusion obviates the necessity for the limited hearing into the circumstances of the delay that was directed by the Court of Military Review.

The delay in *Gill* was 168 days. The record indicates that at least part of the delay was occasioned by the defense, and there is a good basis for an inference that the accused was still seeking important evidence for sentence purposes as late as 10 days before trial so that he might not have been ready for trial during that period. Although the period of remaining delay is longer than in *Sloan* and *Hatton,* we cannot conclude that the interests of justice would be served by disregard of the accused's failure to object at trial.

We answer in the affirmative the certified question in *Sloan* and *Gill,* which asks whether "in light of . . . *Burton* . . . [was the Army Court of Military Review] correct in holding that, absent evidence indicating a denial of military due process or manifest injustice, an accused who does not object at the time of trial to a delay in excess of three months in bringing him to trial will be precluded from raising the issue at the appellate level," and we affirm the decision of the court in each case. We answer in the negative the certified question in *Hatton,* which asks whether the Court of Military Review was "correct in ordering a limited rehearing concerning a possible denial of speedy trial even though the accused did not raise the issue either at trial or on appeal," and we reverse the decision of the court; we return the record to the Judge Advocate General of the Army for resubmission to the court for further proceedings consistent with this opinion.

Chief Judge DUNCAN concurs.